ARKANSAS DEPARTMENT OF HUMAN SERVICES
*v.* John HEATH

92-962                                    848 S.W.2d 927

Supreme Court of Arkansas
Opinion delivered March 1, 1993

*Bruce P. Hurlbut*, Asst. Chief Counsel, for appellant.

*Rose Law Firm*, by: *Webster L. Hubbell* and *David P. Martin*; and *Rieves & Mayton*, by: *Elton A. Rieves, III*, for appellee.

DAVID NEWBERN, Justice. This is the second appeal in this case which arose when the Department of Human Services (DHS) received a report of possible child abuse committed by John Heath, Principal at Marion Middle School. The report stated Mr. Heath had hit a student three times on the buttocks with a wooden paddle. Investigation confirmed the paddling occurred, and a DHS report concluded there was "some credible evidence of child abuse." In addition, a box was checked on the DHS report form indicating that the report of child abuse was "substantiated." Mr. Heath appealed through administrative channels without success and then to the Circuit Court. The Court found the allegation unsubstantiated and ordered that Heath's name be immediately expunged from DHS records. DHS appealed, contesting only the Trial Court's determination that the law requiring even unsubstantiated allegations be retained in a DHS registry for three years was unconstitutional.

We remanded the case for notification of the Attorney General pursuant to Ark. Code Ann. § 16-111-106 (1987) in view of constitutional challenge. *Arkansas Department of Human Services* v. *Heath*, 307 Ark. 147, 817 S.W.2d 885 (1991). The case is here again in the same posture, the Trial Court having ordered DHS to expunge from its central registry the entry regarding Mr. Heath. DHS does not appeal from that part of the Trial Court's order finding that the report was "unsubstantiated." While the record does not disclose the manner in which DHS will alter its record to show that the allegation is unsubstantiated, we must assume that it will do so. Arkansas Code Ann. §§ 12-12-505 and 12-12-506 require DHS to treat "unfounded" reports differently from others. The only argument in this appeal

is about the constitutionality of a statutory scheme by which DHS is required to retain "unsubstantiated" reports in its central registry.

Mr. Heath contends the statutory scheme by which such a record of an unsubstantiated allegation of child abuse is retained violates his right to due process and equal protection of the laws as well as the separation of powers doctrine and his right to privacy. DHS argues the Court erred in ordering the record concerning the allegations against Heath removed from the registry as the statute does not usurp any judicial function or violate constitutional rights.

Because there is no constitutional violation, we reverse and dismiss that part of the ruling directing expungement of the DHS records.

## 1. The statutes

We agree with the DHS contention that the statutes prohibit expunging the record of an allegation of child abuse determined to be unsubstantiated from the central registry for a period of three years. Arkansas Code Ann. § 12-12-505 (Supp. 1991) provides that records in the DHS central registry of unfounded child abuse allegations be destroyed at the expiration of three years. While that provision might seem to permit some discretion to destroy a record prior to the passage of three years, we conclude the General Assembly intended such records be kept for the entire period. A provision requiring immediate expungement of a record not supported by "credible evidence" appearing in Act 397 of 1975 was repealed in favor of the current provision by § 17 of Act 1208 of 1991. The repeal of that provision in combination with the provision requiring expungement after three years reveals the General Assembly's intent that the information be kept for three years.

## 2. Separation of powers

Mr. Heath argues the statute violates the separation of powers doctrine and usurps judicial functions as it restricts the inherent power of a court to fashion an appropriate remedy and order expungement of a record. He cites *United States* v. *Dooley*, 364 F. Supp. 75 (E.D. Penn. 1973) and *United States* v. *Linn*, 513 F.2d 925 (10th Cir. 1975).

In the *Dooley* case, the defendant sought to have arrest records eradicated following an acquittal. The Court refused, indicating that such a determination was a legislative function even though it expressed grave concern with the potential for an invasion of the privacy of the individual if the information were to fall into the wrong hands.

The *Linn* case involved an attorney acquitted of all charges in a 59-count indictment. He sought expungement, but the Court declined, concluding that acquittal alone, without a showing that the records had been or would be improperly or intrusively used, was not sufficient to require expungement.

■ The cases are not helpful to Mr. Heath's cause. Arkansas Code Ann. § 12-12-506 (Supp. 1991) limits the disclosure of unfounded allegations to DHS offices for purposes of the administration of adoption, foster care, children's protective services programs, or child care licensing programs. There can be no further disclosure of this information, and there has been no showing that the retained information is being misused or that that will occur in the future. We agree with DHS that there has been no invasion of the judicial function by this enactment.

### 3. Due Process

Neither the statute nor DHS policy provides a process by which one wrongfully accused of child maltreatment may have one's name removed from the registry prior to the expiration of three years. Mr. Heath argues that this lack of process to deal with records concerning unfounded claims, coupled with potential negative consequences resulting from possible wrongful dissemination, renders the legislation violative of his right to due process of law.

■ It is Mr. Heath's burden to show that the Act is unconstitutional, *Arnold* v. *Kemp*, 306 Ark. 294, 813 S.W.2d 770 (1991). This is an especially heavy burden as legislation is presumed not to be unconstitutional. *First National Bank* v. *Arkansas State Bank Comm'r*, 301 Ark. 1, 781 S.W.2d 744 (1989).

■ We made it clear in the *First National Bank* case that one challenging legislation as a deprivation of due process of law must show that a property interest is at stake. That was also one of

the holdings in *Board of Regents* v. *Roth*, 408 U.S. 564 (1972). Mr. Heath argues the potential injury to his reputation constitutes a deprivation of a property interest. The law does not support his claim.

■ The Supreme Court in *Paul* v. *Davis*, 424 U.S. 693 (1976), was confronted with the publication of Davis's name on a Louisville police flyer with names and photographs of active shoplifters. Davis complained that the infliction by state officials of a "stigma" to one's reputation was an infliction of harm actionable under 48 U.S.C.S. § 1983 and the Fourteenth Amendment. The Court reversed the Sixth Circuit Court of Appeals and stated:

> The second premise upon which the result reached by the Court of Appeals could be rested—that the infliction by state officials of a 'stigma' to one's reputation is somehow different in kind from infliction by a state official of harm to other interests protected by state law—is equally untenable. The words 'liberty' and 'property' as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law. While we have in a number of our prior cases pointed out the frequently drastic effect of the 'stigma' which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause. As we have said, the Court of Appeals, in reaching a contrary conclusion, relied primarily upon *Wisconsin* v. *Constantineau*, 400 U.S. 433 (1971). We think the correct import of that decision, however, must be derived from an examination of the precedents upon which it relied, as well as consideration of the other decisions by this Court, before and after *Constantineau*, which bear upon the relationship between governmental defamation and the guarantees of the Constitution. While not uniform in their treatment of the subject, we think that the weight of our decisions establishes no constitutional doctrine converting every defamation by a public official

into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. 424 U.S. 701, 702.

The *Constantineau* case involved a Wisconsin statute providing that designated persons could forbid the sale of liquor to persons who exposed their families to want or became dangerous to the peace. Constantineau had been posted as one of those persons by the chief of police of Hartford. The District Court granted an injunction against enforcement of the statute finding it unconstitutional as it provided no process to the individual so labeled, and the Supreme Court upheld the injunction saying, "We agree with the District Court that the private interest is such that those requirements of procedural due process [notice and opportunity to be heard] must be met" and "[o]nly when the whole proceedings leading to the pinning of an unsavory label on a person are aired can oppressive results be prevented."

Clearly the import of the *Paul* case was to limit the holding in the *Constantineau* case to its facts and to make it clear that a potential injury to reputation did not involve a due process violation. The *Paul* case is controlling, and it provides no support for Mr. Heath's claim.

█ In addition *Ingraham* v. *Wright*, 430 U.S. 651 (1977), reveals that there must be a property interest coupled with a lack of procedural safeguards to lift a denial of notice and hearing to the level of a constitutional deprivation. In the *Ingraham* case, the Supreme Court considered the matter of corporeal punishment in a public school. The Court found there was a liberty interest but concluded, "In view of the low incidence of abuse, the openness of our schools, and the common-law safeguards that already exist, the risk of error that may result in violation of a schoolchild's substantive rights can only be regarded as minimal."

Mr. Heath seeks to distinguish the *Paul* case because the Court emphasized that Davis had a remedy in state tort law, which is not available in this case, and because the Court noted that defamation accompanied by an infringement of a right or status could raise a constitutional claim. While it is true that these facts were noted, it is critical to our inquiry to recognize that Davis had a state remedy because the charges of shoplifting against him had been dismissed, and he had not been found to be a

shoplifter. The information in the flyer was untrue, thus establishing the basis for a defamation claim. Again, assuming the DHS central registry now reflects the finding of the Trial Court that the report is "unsubstantiated," a finding which has not been appealed, nothing in the central registry listing concerning Heath is *untrue*.

Also cited is *Goss* v. *Lopez*, 419 U.S. 565 (1975). The case involved an Ohio public school system which permitted suspensions without notice or hearing either prior to or within a reasonable time after the suspension. The case is inapplicable for several reasons, the primary one being that the Court recognized first that the students had a constitutionally protected property interest in their entitlement to a public education, the direct deprivation of which was at hand.

Another significant reason the *Goss* case does not help is that the portion of the case on which Mr. Heath relies is a direct quotation from the *Constantineau* case, the effect of which was limited by the *Paul* case. While the *Goss* case also cites the *Roth* case for the same proposition, it is again the *Constantineau* case to which the quoted language must be attributed.

■ DHS cites *Codd* v. *Velger*, 429 U.S. 624 (1977), a *per curiam* opinion involving reference in a former police officer's personnel file to a possible suicide attempt. The District Court had found no property interest in continued employment and no stigmatization which implicated constitutional interests, but the Court of Appeals found there to be a stigma problem. The Supreme Court reversed, concluding at pp. 628 and 629:

> Even conceding that the respondent's termination occurred solely because of the report of an apparent suicide attempt, . . . respondent has at no stage of this litigation affirmatively stated that the 'attempt' did not take place as reported. The furthest he has gone is a suggestion by his counsel that '[i]t might have been all a mistake, [i]t could also have been a little horseplay.' This is not enough to raise an issue about the substantial accuracy of the report. Respondent has therefore made out no claim under the Fourteenth Amendment that he was harmed by the denial of a hearing, even were we to accept in its entirety the determination by the Court of Appeals that the creation

and disclosure of the file report otherwise amounted to stigmatization within the meaning of *Board of Regents* v. *Roth*.

In this case there is no doubt the information Mr. Heath seeks to have expunged, *i.e,,* a report of suspected child abuse now marked "unsubstantiated," is true. He has shown no invasion of a property interest. The statute does not violate Mr. Heath's right to due process of law.

## 4. Equal protection

Mr. Heath next argues the statute violates his right to equal protection of the laws by creating a classification of persons which is wholly arbitrary. *J.W. Black Lumber Co.* v. *Arkansas Pollution Control & Ecology Dep't.*, 290 Ark. 170, 717 S.W.2d 807 (1986). He argues the classification created discriminates between those who have been accused and found innocent of child maltreatment and those who have never been accused. The accused and the non-accused are both innocent, but the accused have their names placed in the central registry. DHS agrees that a classification may exist but argues that the "any rational basis" test of *Arkansas Hospital Association* v. *Arkansas State Board of Pharmacy*, 297 Ark. 454, 763 S.W.2d 73 (1989), is satisfied because the maintenance of the names of persons against whom unfounded accusations have been made permits them to substantiate malicious reporting violations by tracking the names of those who frequently make reports which prove to be unfounded. It also points out that maintaining the names of accused persons against which unfounded reports have been made is necessary to establish patterns of continuous and cumulative injuries which, in isolation, would not rise to the level of substantiated abuse. We agree that both these reasons provide a rational basis for maintaining unfounded accusation records in the central registry.

## 5. Privacy

DHS argues that the Supreme Court has not extended the right of privacy to matters relating to the government collecting and retaining data concerning private citizens. We agree that is the essence of the decision in *Whalen* v. *Roe*, 429 U.S. 589 (1977). The case involved the collection of data by New

York concerning the dispensing of Schedule II drugs. In the time in which the statute had operated the information had been utilized twice. The petitioners, patients and physicians, argued the information was unnecessary and invaded their right to privacy. On the necessity issue, the Court said, at p. 597, "State legislation which has some effect on individual liberty or privacy may not be held unconstitutional simply because a court finds it unnecessary, in whole or in part." On the privacy issue the Court was somewhat more reticent and stated, at pp. 605 and 606:

> The right to collect and use such data for public purposes is typically accompanied by a concomitant statutory or regulatory duty to avoid unwarranted disclosures . . . nevertheless New York's statutory scheme, and its implementing administrative procedures, evidence a proper concern with, and protection of, the individual's interest in privacy. We therefore need not, and do not, decide any question which might be presented by the unwarranted disclosure of accumulated private data—whether intentional or unintentional—or by a system that did not contain comparable security provisions. We simply hold that this record does not establish an invasion of any right or liberty protected by the Fourteenth Amendment.

Given the safeguards afforded by the statutory scheme at issue, we are satisfied that the legislative enactment remains within the scope of the limits stated in the *Whalen* case.

Mr. Heath cites *Eddy* v. *Moore*, 5 Wash. App. 334, 487 P.2d 211 (1971), which dealt with the question of the legality of the retention of a record of an acquitted person's fingerprints and photographs in police files on privacy grounds. After analyzing State of Washington and federal law, the Court concluded at 487 P.2d, pp. 217 and 218:

> We believe the right of an individual, absent a compelling showing of necessity by the government, to the return of his fingerprints and photographs, upon an acquittal, is a fundamental right implicit in the concept of ordered liberty and that it is as well within the penumbras of the specific guarantees of the Bill of Rights 'formed by emanations from those guarantees that help give them life

and substance'. *Griswold* v. *Connecticut*, 381 U.S. 470 (1965).

It will take a compelling showing on the part of the state to justify a retention of the fingerprints and photographs. . . .

***

The Washington statutes governing what is done with fingerprints and photographs upon acquittal of an accused are too limited in their scope. Their failure to provide for return of the fingerprints and photographs upon acquittal, absent a compelling showing justifying their retention, is a constitutionally defective omission.

The *Eddy* case is distinguishable for numerous reasons but primarily because the nature of the intrusion into privacy differs so greatly. Fingerprints and photographs which could be utilized in criminal investigations or photo identifications for uncharged crimes are substantially different from the listing of one's name in a registry. Both the potential for misuse and the lack of any stated safeguards make a significant difference, therefore, the retention of this information was also probably outside the scope of the later ruling in the *Whalen* case.

We are persuaded by the reasoning in *Wade* v. *Goodwin*, 843 F.2d 1150 (8th Cir. 1988), that the maintenance of Heath's name on the central registry does not constitute an invasion of his privacy. William Wade was placed on a list of persons identified as "survivalists," and the list was to be circulated to the State Troopers. Pursuant to an FOIA request, the list was published in newspapers of wide and local circulation. Wade alleged the publication invaded his right to privacy. After stating that the "constitutional right to privacy is generally limited to only the most intimate aspects of human affairs," the Court said:

At argument Wade candidly conceded that it was highly doubtful, if not impossible, to prove any real damages as a result of the compilation or publication of the 'list,' and counsel stated that primarily Wade wanted a 'name clearing' hearing. Wade evidently believes that a 'good name is rather to be chosen than great riches, and loving favor rather than silver and gold.' *Proverbs* Ch. 22,

verse 1. Perhaps unfortunately, neither this court nor the district court has jurisdiction under § 1983 to give Wade a name-clearing hearing. At bottom, his complaint alleges, if any cause, a state tort action for defamation of character.

We agree with that conclusion. There is no constitutional violation here, thus we reverse the Trial Court's order which required immediate expungement of the record in issue.

Reversed and dismissed.

CORBIN and BROWN, JJ., dissent.

DONALD L. CORBIN, Justice, dissenting. I dissent.

The majority determines that "nothing in the central registry listing concerning Heath is *untrue*." This finding clearly goes against the determinations by the trial court that there was no credible evidence to support the charge and that the court remained convinced that to allow an *innocent man's name* to remain on a central list of child abusers for three years with all its potential nuisances is a violation of that individual's constitutional rights. To be fair, the physical act of spanking the child at school was not controverted — but a judicial finding *was made* that the act of child abuse was untrue.

The DHS' statutory reporting scheme as it relates to the treatment Mr. Heath is receiving should be examined within the following framework: What safeguards are afforded by the statutory scheme so as to evidence a proper concern with, and protection of, the individual's interest in privacy as alluded to in *Whalen* v. *Roe*, 429 U.S. 589 (1977)? There is none!

In *Riggs, Peabody & Co.* v. *Martin*, 5 Ark. 506 (1884), the court declared unconstitutional a legislative act that among other things precluded a creditor of an estate from asserting his claim by affidavit but required that he appear in open court to assert his claim. The court stated, "[t]he Legislature certainly does not possess the power to cut off all remedy or demands against the estate of deceased persons, or so to impair the right or clog its assertion as to render it inoperative or valueless." The legislature places an onerous burden on the assertion of his rights, and oppresses him not only by requiring a useless but expensive act to be done, and when it is performed, it allows it to have no weight or

influence in his favor in the cause. In reaching this conclusion, the court noted:

> It is a maxim of universal justice pervading the whole system of the common and civil law that wherever a party has a legal right he is entitled to a legal remedy to enforce it. For, if this was not the case, it could not be said that the laws reigned and governed the rights of contract. It is the obligations of the laws compelling men to perform their legal duties or punishing them for their violation that gives security and affords protection to life, liberty and property; and the peaceful and unfettered enjoyment of these blessings mark the boundaries between just and arbitrary governments.

*Id.* at 508-09. This case turned on the convenience to the creditors of an estate. Surely the state owes as much to Mr. Heath.

In *Davis* v. *Schimmel*, 252 Ark. 1201, 482 S.W.2d 785 (1972), we addressed an issue of an infringement of a property interest, stating:

> A purely arbitrary or capricious exercise of legislative power, whereby a wrongful and highly injurious invasion of property rights is practically sanctioned and the owner stripped of all remedy is wholly at variance with the principles of due process. *In the concrete, due process means that in a contest concerning rights of life, liberty or property, a citizen will be given a reasonable opportunity to contest the propriety of each step in the proceedings against him.* Since notice and an opportunity to be heard are prerequisites of jurisdiction and jurisdiction a prerequisite of a valid judgment, the legislature is without authority to dispense with these requirements of due process.

*Id.* at 1208, 482 S.W.2d at 789 (citations omitted) (emphasis added).

What a hollow victory it is for Mr. Heath. He is declared innocent of child abuse in our state court system which utilized concepts of due process, but is still forced for three years to carry the label of child abuser by an administrative agency of the state acting under the auspices of the state legislature. I do not know

how the majority can assume there is a report of suspected child abuse now marked "unsubstantiated." If anything, the record reflects to the contrary. This is evident in its motion for clarification and amendment to the trial court requesting a modification of its order of December 10, 1990, so as to indicate that the report of alleged child abuse "is determined unfounded by the court and the central registry record should accordingly be corrected." Thus it would seem to this dissenter, that DHS is of the opinion it has no authority to correct its own records *without an order by the court*. By implication, I am led to the conclusion that such a correction has not and will not be made.

Surely, the courts have the inherent power to provide a remedy to one whose rights have been violated by the capricious exercise of legislative power as in the instant case. What good does it do to provide Mr. Heath procedural due process in our court system but deny him a remedy or any sense of justice?

What we now have are these reports and conclusions by DHS personnel and its Hearing and Appeals Board depicting John Heath as a child abuser. DHS' record will not reflect that a court of this state has determined to the contrary. And now, we refuse to act. This is wrong.

Reputation, for the most part, has not been determined to be a property interest. The reputation of Mr. Heath under the facts of the instant case may very well rise to the level of a property interest. I can think of no higher damage, in dollars and cents, to an educator being labeled a child abuser by a state agency. What school district board in its right mind would ever look beyond the DHS record when considering Mr. Heath for employment? The inquiry would stop right there. I do not see this prospect as being speculative. It is a very real damage to his property interest encompassing income and advancement in the field of education. It is bad enough that the court records of his trial will be around forever.

BROWN, J., joins in this dissent.