Delores ROBINSON *v.* Kenneth LANGDON

97-1451                                        970 S.W.2d 292

Supreme Court of Arkansas
Opinion delivered June 25, 1998

*Frank Gobell,* for appellant.

*Evans, Farrar, Reis & Associates,* by: *Bryan J. Reis,* for appellee/ cross-appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.,* by: *Byron Freeland* and *Leigh Anne Yeargan,* for cross-appellees Delores Robinson, Doug Shuffield, Elizabeth Smith, and The General Council of the Assemblies of God d/b/a Hillcrest Children's Center.

DAVID NEWBERN, Justice. Kenneth and Tammy Langdon were houseparents at Hillcrest Children's Center ("Hillcrest"), a residential facility operated by the General Council of the Assemblies of God. Mr. Langdon disciplined a thirteen-year-old female resident by paddling her. She sustained a bruise on her hip. A complaint by her mother precipitated an investigation by Doug Shuffield and Delores Robinson, employees of the Department of Human Services ("DHS"). As a result of the incident and investigation, Mr. and Ms. Langdon were assigned to new duties at Hillcrest where they would have no supervisory responsibility with the resident children. The Langdons ultimately resigned from their employment at Hillcrest.

Mr. Langdon's name was placed in a registry of child abusers maintained by DHS. He appealed through administrative channels. A DHS hearing officer, Elizabeth Smith, determined that the allegations against him were "founded." Her decision was overturned on appeal to the Circuit Court, and Mr. Langdon's name was removed from the list. Thereafter, Mr. and Ms. Langdon sued Ms. Robinson, Mr. Shuffield, Ms. Smith, the State of Arkansas, and Hillcrest. A number of claims for relief were asserted.

The Langdons nonsuited their claim against the State. Motions by Ms. Robinson and Mr. Shuffield for summary judgment on the basis of their qualified immunity as state employees were denied. Ms. Smith's motion for summary judgment on the basis of judicial and qualified immunity was granted as was Hillcrest's motion for summary judgment on the civil rights and contract claims against it.

Summary judgment was entered with respect to Ms. Langdon's claims, and she has not appealed. Ms. Robinson and Mr. Shuffield appeal from the denial of their summary judgment motions. Mr. Langdon cross-appeals from the summary judgment rulings favorable to Hillcrest and Ms. Smith. We hold that it was error to have refused to grant summary judgments to Mr. Shuffield and Ms. Robinson, as they were entitled to qualified immunity from suit. We affirm the summary judgments awarded to Ms. Smith and to Hillcrest.

It is undisputed that Mr. Langdon paddled the thirteen-year-old resident with a paddle furnished by Hillcrest. It was done in the presence of a witness, following discipline guidelines established by Hillcrest.

Mr. Shuffield is assigned by DHS to investigate abuse claims, and Ms. Robinson is assigned to the DHS division concerned with licensing child-care facilities. Their conclusion, and the resulting conclusion of Ms. Smith was that the allegation of abuse be considered "founded," based on interviews with persons who think Mr. Langdon has a short temper and the fact that the bruise resulting from the paddling remained evident some four or five days thereafter. It was also based on a DHS policy that required "founding" of an abuse claim if a bruise resulted from a disciplinary act. DHS no longer has such a policy.

At the conclusion of the investigation Ms. Robinson wrote to a Hillcrest official, stating that corrective action was required by the licensing agency and recommending that Mr. Langdon's employment be terminated, recognizing that the final decision rested with the Hillcrest Board of Directors. Mr. Langdon was not dismissed; instead, Hillcrest offered Mr. Langdon a transfer to the maintenance section and Ms. Langdon a transfer to employment in the kitchen. They were told that if they refused the reassignments they would have a choice of resigning or being terminated. The Langdons chose to resign.

### 1. Immunity

#### a. Jurisdiction

■ We do not ordinarily allow appeals from denial of summary judgment. *Direct Gen. Ins. Co. v. Lane,* 326 Ark. 476, 944 S.W.2d 528 (1997); *White v. Welsh,* 327 Ark. 456, 939 S.W.2d 299 (1997). When, however, the issue is a claim of qualified immunity from suit, appeal is allowed, else the immunity from suit would be meaningless. *Nucor Holding Corp. v. Rinkines,* 326 Ark. 217, 931 S.W.2d 426 (1996); *Virden v. Roper,* 302 Ark. 125, 788 S.W.2d 470 (1990).

Mr. Langdon's claims against Mr. Shuffield and Ms. Robinson are asserted on the basis of the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §§ 16-123-101 through 16-123-108 (Supp. 1997) as well as 42 U.S.C. § 1983.

#### b. Arkansas Civil Rights Act — qualified immunity

Section 16-123-105(a) provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions subjects, or causes to be subjected any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party injured in an action at law, a suit in equity, or other proper proceeding for redress.

Arkansas Code Ann. § 19-10-305(a) provides:

> Officers and employees of the State of Arkansas are immune from liability from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment.

Mr. Langdon does not contend that Mr. Shuffield and Ms. Robinson were acting other than in the scope of their employment by the State. Nor did he plead that they were covered by liability insurance or that their acts were malicious. In his argument to this Court, Mr. Langdon contends that the DHS employ-

ees did not act in "good faith." As his authority for that argument, he cites *Arkansas Dept. of Human Svcs. v. Caldwell,* 39 Ark. App. 14, 832 S.W.2d 510 (1988), in which the Court of Appeals held that bruising alone should not be used as a "litmus test" to determine whether a disciplinary paddling administered by a teacher should be "substantiated" as abuse. Mr. Langdon argues that the DHS employees could not have been acting in good faith in view of that decision and that Ms. Smith, to whom they presented a copy of it, reached an illegal and unfair decision at the administrative hearing.

The Court of Appeals decision in the *Caldwell* case affirmed a trial court's decision requiring the removal from the child abuse registry of the name of a teacher who had administered punishment to a student. Here is what the Court of Appeals wrote:

> We do not believe that one factor, standing alone and applied as a litmus test, without consideration of all the attendant circumstances, is an appropriate measure to be used in all cases for determining whether an allegation of abuse is to be substantiated in all cases. There must be some exercise of judgment, as this is an area which does not lend itself to facile determination. On this record, we uphold the circuit court's finding of no credible evidence of abuse, and its finding that the punishment was not excessive or abusive.

39 Ark. App. at 18-19, 832 S.W.2d at 513.

Although Mr. Shuffield testified that the "founding" of the abuse allegation was based upon the DHS bruise policy, he said it was also based upon the evidence concerning Mr. Langdon's short temper and the duration of the bruise. The evidence in this case is not like that in the *Caldwell* case. If "good faith" were the issue, we could not say the recommendations made to Hillcrest and the placement of Mr. Langdon's name in the registry were not done in "good faith." Again, we note that Mr. Langdon has not pleaded or argued that the DHS employees acted with malice, and we assume that pleading and argument have been omitted with good reason.

■ ■ Mr. Langdon's primary argument, rather, is that by enacting § 16-123-105(a) the General Assembly intended to

repeal § 19-10-305(a). No authority other than the language of the two statutes is cited. Repeal by implication is not a favored device in our interpretation of statutes, and we must construe all statutes relating to the same subject matter together. *Waire v. Joseph*, 308 Ark. 528, 825 S.W.2d 594 (1992). We have no difficulty in reading the two statutes in harmony. We might have a closer question if state employees were said to be liable for deprivations of rights under one law and absolutely immune from liability under another, but that is not the case. The immunity statute is qualified by the provision concerning acting with malice, and thus it may coexist with the Arkansas Civil Rights Act.

### c. Judicial immunity

Ms. Smith was held to have qualified as well as judicial immunity. In his cross-appeal, Mr. Langdon argues that it was error to apply judicial immunity to Ms. Smith. Judicial immunity is absolute immunity. *McCrory v. Johnson*, 296 Ark. 231, 755 S.W.2d 566 (1988). We agree that Ms. Smith's actions fell within judicial immunity, and thus we need not consider the application of qualified immunity to her.

Ms. Smith's undisputed affidavit states that she was a DHS Fair Hearing Officer or Administrative Law Judge assigned to hear Mr. Langdon's claim. Her job required her to administer oaths to witnesses, rule on evidentiary matters, rule on objections, and issue findings and conclusions of law in a final order.

In *Butz v. Economou*, 438 U.S. 478, 512-13 (1978), the United States Supreme Court held that "adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." The Supreme Court specifically noted that "federal administrative law requires that agency adjudication contain many of the same safeguards as are available in the judicial process," and that the administrative law judge's "powers are often, if not generally, compared to those of a trial judge." *Id.* at 513. The Supreme Court also emphasized that "the process of agency adjudication is currently structured so as to assure that the hearing examiner exercises his

independent judgment . . . ." *Id.* at 513. *See also Jones v. Singer v. Career Systems,* 584 F. Supp. 1253, 1257 (E.D. Ark. 1984) ("Just as federal agency hearing examiners and administrative law judges can claim absolute judicial immunity from damages when carrying out authorized adjudicatory functions, it appears that *state* agency hearing examiners and administrative law judges should enjoy similar insulation from liability when they carry out their adjudicatory functions.") *See also Cleavinger v. Saxner,* 474 U.S. 193 (1985), in which the Supreme Court, citing the *Butz* case, noted the following factors as characteristics of the judicial process and to be considered in determining absolute immunity: "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards *that reduce* the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." *Cleavinger v. Saxner,* 474 U.S. at 202.

■ We adopt the Supreme Court's test for judicial immunity, and we hold that Ms. Smith's role as a DHS hearing officer meets the Supreme Court's description of facts warranting judicial immunity.

### d.  Federal civil rights law — qualified immunity

■ The federal statute, 42 U.S.C. § 1983, provides a cause of action against "every person who, under color of any statute . . . subjects or causes to be subjected any citizen . . . to the deprivation of any rights . . . ." The DHS employees have a qualified immunity from suit under § 1983 similar to the immunity that applies to them with respect to the Arkansas law.

> Under the standard of qualified immunity articulated in *Harlow v. Fitzgerald,* the [government official] will be entitled to immunity so long as his actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."

*Mitchell v. Forsyth,* 472 U.S. at 524 (quoting *Harlow v. Fitzgerald,* 457 U.S. at 818 (1982). In *Robinson v. Beaumont,* 291 Ark. 477,

725 S.W.2d 8139 (1987), we adopted the Supreme Court's test for qualified immunity in cases brought pursuant to § 1983.

■ Mr. Langdon argues that in *U.S. v. Lanier*, 117 S.Ct. 1219 (1997), the Supreme Court equated the "fair warning" standard in criminal cases with the standard for qualified immunity. He contends Mr. Shuffield had "fair warning" that he was violating a clearly established right in determining that the allegation of abuse was "founded." As we discussed above with respect to the Arkansas Civil Rights Act, the Court of Appeals *Caldwell* decision held that bruising was only one fact to be considered. It did not give "fair warning" to Mr. Shuffield that he should not consider allegations to be "founded" when other circumstances indicate corporal punishment of a child may have been abusive.

■ Nor was Ms. Robinson guilty of violating an "established right" of Mr. Langdon as the result of her letter suggesting that he be terminated. Mr. Langdon had no property interest in his employment as he was an at-will employee. *See Johnson v. City of West Memphis*, 113 F.3d 842 (8th Cir. 1997). Mr. Langdon argues he was not an at-will employee because, according to the Hillcrest Employees Handbook he became a "permanent" employee after a probationary period.

■ If an employee handbook published by the employer provides that an employee may only be terminated for cause, the employee may have a right to continued employment. *Gladden v. Arkansas Children's Hospital*, 292 Ark. 130, 728 S.W.2d 501 (1987). Mr. Langdon does not argue or demonstrate that the handbook he received from Hillcrest has any such provision. His right to employment was nonexistent.

■ ■ Mr. Langdon argues without citation to authority that his right to procedural due process was violated by the fact that Ms. Robinson sent her letter to Hillcrest prior to giving him a hearing and that his reputation was injured by her act and those of Mr. Shuffield. Absent citation to authority or the rendition of convincing argument we do not reverse. *Dixon v. State*, 260 Ark. 857, 545 S.W.2d 606 (1977). We do note, however that, as to the claim of injury to reputation, we have recognized that the law does not support a claim that potential injury to reputation consti-

tutes a deprivation of a property interest. *Arkansas Dep't of Human Svcs v. Heath,* 312 Ark. 206, 848 S.W.2d 927 (1993).

Again, Mr. Langdon has demonstrated no violation of a clearly established right, and summary judgment against his claim for damages against the DHS employees under 42 U.S.C. § 1983 was proper.

## 2. Hillcrest

### a. State actor — color of state law

The Trial Court properly certified the "dismissal" of the claim against Hillcrest as a decision appropriate for appeal pursuant to Ark. R. Civ. P. 54(b). Mr. Langdon's cross-appeal of that ruling, which we understand to have been a summary judgment favoring Hillcrest rather than a dismissal, must also fail. The argument is that, as a result of DHS coercion Hillcrest unjustifiably forced Mr. Langdon out of his job. We have strong doubts whether Hillcrest can be said to have been a "state actor" in the circumstances presented, but even if it were, we need only note again that Mr. Langdon had no protectable property interest in his employment.

### b. Breach of contract

Mr. Langdon argues that the Trial Court erred in finding that there was no genuine issue of material fact with respect to his breach of contract claim against Hillcrest. First, Mr. Langdon argues that he was discharged in violation of a well-established public policy of the State. Public policy has been controverted "when the reason alleged to be the basis for a discharge is so repugnant to the general good as to deserve the label 'against public policy.'" *Marine Services Unlimited, Inc. v. Rake,* 323 Ark. 757, 918 S.W.2d 132 (1996). Mr. Langdon cites no authority and makes no convincing argument for his position that he was discharged in violation of public policy.

Second, Mr. Langdon argues that summary judgment should have been denied because, pursuant to the Hillcrest Employees Manual, he was classified as a "permanent employee." He cites *Jackson v. Kenark Corp.,* 282 Ark. 548, 669 S.W.2d 898 (1984). In the *Jackson* case an employee, citing an employee hand-

book, contended he had a right to continued employment because the handbook provided for an "initial trial period" of three months. Summary judgment was awarded to the employer who had dismissed Mr. Jackson. We reversed and remanded the case so that the facts could be developed further. We did not hold that the little we knew of the employee handbook overcame the employment-at-will doctrine. We have since held that, to constitute a contract sufficient to overcome the employment-at-will doctrine, an employee handbook must expressly state that an employee can only be terminated for cause. *See e.g., Gladden v. Arkansas Children's Hospital, supra.*

█ In his reply brief, Mr. Langdon stated that the employment manual provides a method of determining whether cause exists and outlines rehabilitative steps; however, the manual as abstracted, only states that termination can be expected upon receipt of a third disciplinary action. Mr. Langdon does not argue that Hillcrest breached the provisions of the manual guaranteeing that certain steps would be followed before termination occurs.

Affirmed in part; reversed and remanded in part.