Cite as 2023 Ark. 160
# SUPREME COURT OF ARKANSAS
No. CV–22–143

|  |  |
|---|---|
| | **Opinion Delivered:** November 9, 2023 |
| BENTON SCHOOL DISTRICT; LORI BACON, IN HER INDIVIDUAL AND OFFICIAL CAPACITY; AND LITA GATTIS, IN HER INDIVIDUAL AND OFFICIAL CAPACITY | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CV-20-522] |
| APPELLANTS | HONORABLE BRENT DILLON HOUSTON, JUDGE |
| V. | |
| BRANDI GREER | AFFIRMED IN PART; REVERSED AND REMANDED IN PART; MOTION TO DISMISS APPEAL DENIED; MOTION FOR PARTIAL DISMISSAL DISMISSED. |
| APPELLEE | |

**RHONDA K. WOOD, Associate Justice**

This interlocutory appeal reaches us after the circuit court denied, in part, two school-district employees' motion for summary judgment for qualified immunity. The immunity at issue comes from an Arkansas statute, Ark. Code Ann. § 21-9-301 (Repl. 2022). This statute provides immunity from both suit and liability for certain officials "except to the extent that they may be covered by liability insurance." *Id*. § 21-9-301(a). The circuit court ruled that this statute applied to both a federal claim under 42 U.S.C. § 1983 and a state claim under the Arkansas Civil Rights Act. We hold this immunity statute does not apply to a federal § 1983 cause of action. But we hold it does apply to the claims brought under the Arkansas Civil Rights Act.

## I. *Factual Background*

The underlying lawsuit stems from a complaint filed by Brandi Greer against the Benton School District, Lori Bacon (a principal in the district), and Lita Gattis (an assistant superintendent). The complaint lodged several causes of action against these defendants. The federal claims were under 42 U.S.C. § 1983 and the Rehabilitation Act of 1973. The state claims were under the Arkansas Civil Rights Act, Ark. Code Ann. §§ 16-123-101 et seq. (Repl. 2016 & Supp. 2023). Bacon and Gattis were sued in both their individual and official capacities. We are reviewing only the partial denial of immunity on the claims against Bacon and Gattis as individuals.

The circuit court's order on summary judgment recited the relevant undisputed facts. Brandi Greer had been a substitute teacher at Angie Grant Elementary School, working through Kelly Services USA, LLC, a temporary agency. Greer's child also attended this school. Greer claimed another teacher at the school had mistreated her child, who has a form of attention deficit hyperactivity disorder. Greer eventually removed her child from Angie Grant Elementary and then filed an ethics complaint with the Arkansas Department of Education against her child's teacher.[1] Because of this ethics report, Bacon told Kelly Services that Greer could no longer work at Angie Grant Elementary. Then Lita Gattis, the assistant superintendent, told Kelly Services that Greer could no longer work in the district at all.

---

[1]This complaint was deemed unfounded.

The court's summary-judgment order then addressed liability. The court concluded all defendants—the district, Gattis, and Bacon—were liable under § 1983 and the Arkansas Civil Rights Act for violating Greer's rights to free speech and to petition the government under the First Amendment.[2] The court then addressed a motion asking that Bacon and Gattis be given qualified immunity in their individual capacities. The court granted the motion in part and denied the motion in part. The court reasoned that Bacon and Gattis were entitled to individual-capacity qualified immunity; even so, the court concluded that, under Ark. Code Ann. § 21-9-301, this immunity would not apply to the extent the defendants were covered by liability insurance.

Gattis and Bacon now appeal from the court's partial denial of their motion for qualified immunity. They assert this is an appeal from "an order denying a motion to dismiss or for summary judgment based on the defense of sovereign immunity or the immunity of a government official." Ark. R. App. P.–Civ. 2(a)(10). To begin, we must decide whether we have appellate jurisdiction.

Greer filed a motion to dismiss the appeal arguing that Bacon and Gattis cannot appeal because the circuit court *granted* their motion for qualified immunity. But that's not how the court's order reads. The order states that the immunity "request is . . . granted in part and *denied in part*." (Emphasis added.) Bacon and Gattis challenge only the partial denial on appeal—that is, they limit their argument to whether they are subject to suit to the extent

---

[2]The court also found liability under the federal Rehabilitation Act, but that claim is not at issue on appeal.

3

covered by insurance.[3] Should we agree with their argument on appeal, they could be dismissed from the lawsuit and no longer face trial on the question of damages. This is precisely the reason a party can appeal on an interlocutory basis a ruling denying entitlement to immunity. *See Ark. State Claims Comm'n v. Duit Constr. Co.*, 2014 Ark. 432, at 5, 445 S.W.3d 496, 501. We accordingly deny Greer's motion to dismiss the appeal.

Greer also filed a partial motion to dismiss her own federal section 1983 claims against Bacon and Gattis in their individual capacities. But we lack jurisdiction beyond determining whether the circuit court erred in denying summary judgment on immunity. *City of Malvern v. Jenkins*, 2013 Ark. 24, at 6, 425 S.W.3d 711, 715. Accordingly, we dismiss Greer's motion for partial dismissal of her section 1983 claims.

II. *Law and Analysis*

A. Section 1983 Claims

The first issue involves the circuit court's ruling on the section 1983 claims against Bacon and Gattis in their individual capacities. Citing state law, the court granted Bacon and Gattis's motion for summary judgment on qualified immunity but ruled that their motion was limited to the extent that they may be covered by liability insurance. The circuit court appears to have concluded that the state-law statutory immunity contained in Ark.

---

[3]On appeal, the parties have not contested the existence of insurance or whether it would cover any imposed liability. Those issues are not before us. Nor do we address the merits of the remainder of the court's rulings on summary judgment or its findings on the granting, in part, of qualified immunity to Bacon and Gattis. The sole question before the court is whether Ark. Code Ann. § 21-9-301 should apply to Greer's section 1983 and Arkansas Civil Rights claims.

Code Ann. § 21-9-301 limited appellants' qualified immunity under federal law, making them subject to suit even though any liability would be covered by insurance.

We review this issue de novo because entitlement to immunity from suit is a purely legal question. *City of Fayetteville v. Romine*, 373 Ark. 318, 321, 284 S.W.3d 10, 13 (2008). We have adopted the United States Supreme Court's test for qualified immunity from lawsuits based on section 1983. *Robinson v. Langdon*, 333 Ark. 662, 671, 970 S.W.2d 292, 296 (1998) (citing *Robinson v. Beaumont*, 291 Ark. 477, 725 S.W.2d 839 (1987)). We are guided by federal courts in this area of law. *Romine*, 373 Ark. at 322, 284 S.W.3d at 13.

One case from the United States Supreme Court is instructive. *See Howlett v. Rose*, 496 U.S. 356 (1990). In *Howlett*, a Florida appellate court had ruled that the state's sovereign immunity protected a school board from being sued under section 1983 in state court. *Id.* at 360. The *Howlett* court reversed this decision. It concluded the supremacy clause barred a state-law rule "that governmental entities subject to § 1983 liability enjoy an immunity over and above those already provided in § 1983." *See id.* at 375. And, the court held, "[t]he elements of, *and the defenses to*, a federal cause of action are defined by federal law." *Id.* (emphasis added). *Howlett* suggests that federal claims filed in state court are subject to federal defenses. We decline to depart from *Howlett*'s federal–defense holding for this federal action.

Thus, Ark. Code Ann. § 21-9-301 does not impact a claim brought under section 1983. Section 1983 establishes a federal cause of action that can be filed in either state or federal court. *Newton v. Etoch*, 332 Ark. 325, 334, 965 S.W.2d 96, 100 (1998). "As such, it is the supreme law of the land, and any state claim of immunity must yield to it." *Id.* We have before "recognized [that] immunity under state law is not dispositive of a § 1983 claim

5

against state actors in their individual capacities, despite being brought in state court." *Early v. Crockett*, 2014 Ark. 278, at 10 n.5, 436 S.W.3d 141, 14 n.5.

We therefore reverse and remand the ruling denying in part the request by Bacon and Gattis for qualified immunity against the section 1983 claims. Arkansas Code Annotated section 21-9-301 does not apply to these federal claims. On remand, the court should confine its ruling exclusively to the federal doctrine of qualified immunity and without reference to Ark. Code Ann. § 21-9-301.

## B. Arkansas Civil Rights Claim

The second issue involves the claims under the Arkansas Civil Rights Act. Appellants argue that Ark. Code Ann. § 21-9-301 should not apply to these claims because it covers only "typical torts," and to do so would make bad public policy. Thus, they ask us to provide them with the fuller protection of federal qualified immunity, which protects them both from liability and from suit without an insurance exception.

The statutory language in Ark. Code Ann. § 21-9-301 has gone through several changes since its inception. While the law started with immunity from tort claims, it was later expanded to encompass immunity from "suit" in general. The legislature first enacted immunity for political subdivisions through Act 165 of 1969. This Act provided immunity from liability for damages and provided that no tort action would lie against municipal corporations, counties, school districts, and other political subdivisions of the State:

> It is hereby declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the State shall be immune from liability for damages, and no tort action shall lie against any such political subdivision, on account of the acts of their agents and employees.

Act 165 of 1969, § 1.

The legislature expanded this immunity in 1991 with Act 542. While retaining the language that "no tort action shall lie," it also added an additional "immunity from suit." Here is the relevant language:

> [S]chool districts . . . shall be immune from liability *and suit* for damages. No tort action shall lie against any such political subdivision because of the acts of their agents and employees.

Act 542 of 1991, § 7 (emphasis added). Then, in 1993, the legislature carved out an exception to this immunity from liability and suit "except to the extent . . . covered by liability insurance." Act 292 of 1993, § 2.

Today, these Acts are codified at Ark. Code Ann. § 21-9-301, which now reads as follows:

> Tort liability—Immunity declared
>
> (a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, public charter schools, special improvement districts, law enforcement agencies for and certified law enforcement officers employed by a public or private institution of higher education, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies *shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.*
>
> (b) No tort action shall lie against any such political subdivision because of the acts of its agents and employees.

(Emphasis added.)

The statute's progression, therefore, encompassed three movements. The first movement was the 1969 Act, which provided immunity from liability. The second movement was the broader 1991 Act, which provided immunity from liability and suit.

7

The third movement was the 1993 Act, which retained immunity from liability and suit "except to the extent . . . covered by liability insurance."

Greer disputes this understanding of the statute, pointing to its heading, which reads "Tort liability—Immunity declared." She maintains that the immunity was meant to cover typical torts rather than civil-rights claims. But the language does not have this limitation, and civil rights violations are considered a type of tort. And the 1991 Act encompassed a broader range of immunity beyond torts. Other sections of this Act provided immunity from suit for those reporting adult maltreatment, reporting child drug abuse, reporting child maltreatment, and providing information about child-support enforcement. *See* Act 542 of 1991, §§ 1–4.

And the plain text of the statute does not indicate that claims arising under the Arkansas Civil Rights Act fall outside this statute's ambit. While the heading can sometimes shed light on a statute's meaning, it "should never be allowed to override the plain words of a text." Antonin Scalia & Bryan A. Garner, *Reading Law* 221 (2012). Here, the plain words of the statute apply to a suit for damages, like the one brought by Greer under the Arkansas Civil Rights Act.

Finally, we have looked to and applied section 301 as the basis for qualified immunity for claims brought under the Arkansas Civil Rights Act. *See, e.g.*, *Graham v. Cawthorn*, 2013 Ark. 160, at 17, 427 S.W.3d 34, 46 (finding qualified immunity under section 301 for claim against city police officer); *City of Farmington v. Smith*, 366 Ark. 473, 480, 237 S.W.3d 1, 6 (2006) (finding no qualified immunity under section 301 because the official violated clearly established law); *Smith v. Brt*, 363 Ark. 126, 132, 211 S.W.3d 485, 490 (2005) (affirming a

8

finding of qualified immunity under section 301 from claim against city official). These cases show that this court has consistently applied section 21-9-301 as the basis for qualified immunity to civil-rights claims rooted in state law. We would be effectively overruling these cases were we to now hold the statute was inapplicable to claims under the Arkansas Civil Rights Act.

Appellants also maintain such a reading of the statute makes bad public policy. They argue it requires employees with liability insurance to defend themselves in court while allowing those without insurance to reap the full benefits of the immunity. But this court cannot rewrite legislation that may have unintended real-world results. The General Assembly sets policy for the state, not this court. *Shelter Mut. Ins. Co. v. Lovelace*, 2020 Ark. 93, at 9, 594 S.W.3d 84, 88. Should the General Assembly decide to alter the immunity structure for municipalities and school districts, it can amend the statute. As discussed, it has not held back from reconsidering immunity in the past.

We affirm the circuit court's ruling that section 21-9-301 immunity, subject to the insurance exception, applies to claims arising under the Arkansas Civil Rights Act.

Affirmed in part; reversed and remanded in part; motion to dismiss appeal denied; motion for partial dismissal dismissed.

WOMACK and WEBB, JJ., concur.

**SHAWN A. WOMACK, Justice, concurring.** I agree with the majority in reversing and remanding as to the 42 U.S.C. § 1983 claim. Likewise, I agree it is proper to deny Appellee's motion to dismiss the appeal and her partial motion to dismiss her federal § 1983 claim. Finally, I also agree with the majority that the circuit court's order should be affirmed

as to the Arkansas Civil Rights Act claim. Yet, I write separately because I take issue with the majority's characterization of Ark. Code Ann. § 21-9-301. Contrary to the majority's assertion, Ark. Code Ann. § 21-9-301 does not grant political subdivisions "immunity from 'suit' in general." The majority overemphasizes the language from subsection (a) of the relevant statute and effectively reads it in isolation to reach such a conclusion. When the statute is read in its entirety, including the title and subsection (b), it is clear from the plain text that political subdivisions are only entitled to statutory immunity from tort claims. The title reads "Tort liability–Immunity Declared." Subsection (b) provides in part, "No tort action shall lie . . . ." Thus, the majority's claim that § 21-9-301 grants political subdivisions immunity from suit in general, rather than immunity from suit sounding in tort, is at clear odds with a plain reading of the statute.

Although this court has held in the past that Ark. Code Ann. § 21-9-301 provides political subdivisions immunity from claims under the Arkansas Civil Rights Act, it has never provided any articulable reason for doing so.[1] It has not reasoned that Arkansas Civil Rights claims are tort claims, nor has it stated that § 21-9-301 provides political subdivisions immunity from suit in general. Instead, this court has merely cited § 21-9-301 as the basis for a political subdivision's or its employees' immunity. Thus, the majority's reliance on these cases to support its characterization of the relevant statute as providing immunity from suit in general is unavailing. As it is written, § 21-9-301 does not provide general immunity

---

[1] To support its proposition, the majority cites *Graham v. Cawthorn*, 2013 Ark. 160, 427 S.W.3d 34; *City of Farmington v. Smith*, 366 Ark. 473, 237 S.W.3d 1 (2006); and *Smith v. Brt*, 363 Ark. 126, 211 S.W.3d 485 (2005).

10

from suit.  Should the General Assembly wish to provide general immunity from suit, rather than immunity from tort claims, it can amend the statute.  Nevertheless, because civil rights claims are considered a type of tort, the circuit court's order should be affirmed on this issue.[2]

For these reasons, I cannot join the majority's opinion in full.

I respectfully concur.

WEBB, J., joins.

---

[2]The Supreme Court of the United States has repeatedly explained that civil rights suits are analogous to personal injury tort actions. *See, e.g.*, *Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987); *Wilson v. Garcia*, 471 U.S. 261 (1985).