Cite as 2025 Ark. 71

# SUPREME COURT OF ARKANSAS
No. CV–24–226

| | |
|---|---|
| BOYLE VENTURES, LLC<br>        APPELLANT/CROSS–APPELLEE<br><br>V.<br><br><br>CITY OF FAYETTEVILLE,<br>ARKANSAS<br>        APPELLEE/CROSS–APPELLANT | Opinion Delivered:  May 15, 2025<br><br>APPEAL FROM THE BENTON<br>COUNTY CIRCUIT COURT<br>[NO. 04CV-22-2109]<br><br>HONORABLE DOUGLAS<br>SCHRANTZ, JUDGE<br><br>CROSS-APPEAL REVERSED AND<br>REMANDED FOR DISMISSAL;<br>DIRECT APPEAL DISMISSED AS<br>MOOT. |

**CODY HILAND, Associate Justice**

Boyle Ventures, LLC (Boyle), appeals from an order of the Benton County Circuit Court dismissing its complaint against the City of Fayetteville (the City) for an alleged violation of the Arkansas Civil Rights Act. On direct appeal, Boyle argues (1) Ordinance No. 6587 (the Ordinance) violated the Arkansas Constitution, and the City is not immune from damages for violations of clearly established constitutional rights; and (2) the Arkansas Civil Rights Act permits the circuit court to award attorney's fees to the prevailing party. On cross-appeal, the City argues the Ordinance did not violate Arkansas statutory law. Because the Ordinance never went into effect against Boyle and did not deprive Boyle of rights or cause damages, we hold the circuit court erred in finding that enacting the Ordinance violated the statute. Thus, we reverse the circuit court on cross-appeal and remand for an order of dismissal. We dismiss the direct appeal and any other remaining issues as moot.

Although two justices join this opinion, two also agree to reverse and remand for a dismissal of the circuit court's order on the cross appeal which results in an agreement of four justices to reverse and remand for entry of a dismissal order, albeit for different reasons.

I. *Factual Background*

Boyle operates franchised retail pet stores that, among other things, sell cats and dogs obtained from breeders regulated by the U.S. Department of Agriculture. After Boyle obtained a business license to operate a location in Fayetteville, but prior to the opening of the business, the City Council passed Ordinance No. 6587 that prohibited such sales "unless [the animals were] obtained from and in cooperation with the Fayetteville Animal Shelter, a government or nonprofit animal shelter approved by Fayetteville Animal Services, or a nonprofit animal rescue organization approved by Fayetteville Animal Services."

Soon thereafter and prior to the effective date of the Ordinance, Boyle filed suit against the City seeking (1) a declaratory judgment that the Ordinance violated both the Arkansas Retail Pet Store Consumer Protection Act of 1991[1] and the Arkansas Working Animal Protection Act,[2] (2) injunctive relief to prevent the enforcement of the Ordinance, and (3) damages for a violation of its rights under the Arkansas Civil Rights Act.[3] Boyle argued that because the Ordinance conflicted with the aforementioned statutes, the City

---

[1]Arkansas Code Annotated §§ 4-97-101 et seq. (Repl. 2023).

[2]Arkansas Code Annotated § 14-54-1105(b)(2) (Supp. 2023).

[3]"Every person who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions subjects, or causes to be subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party injured in an action in circuit court for legal and equitable relief or other proper redress." Ark. Code Ann. § 16-123-105(a) (Repl. 2016).

violated article 12, section 4 of the Arkansas Constitution, which states: "No municipal corporation shall be authorized to pass any laws contrary to the general laws of the state." This violation, Boyle asserted, was the basis for its claim under the Arkansas Civil Rights Act.

In response, the parties immediately agreed to a temporary restraining order and a stay during the pendency of the action, meaning the Ordinance would not go into effect and the City would not enforce it against Boyle until after the case was decided. However, before the circuit court could rule on the matter, the City repealed the Ordinance. As a result, Boyle conceded that the declaratory relief initially sought was moot. The parties filed multiple competing motions for summary judgment whereby Boyle sought damages for the alleged civil rights violation and the City argued that qualified immunity precluded such relief. At the conclusion of the hearing on the motions, the circuit court ultimately ruled in favor of the City by granting its motion. The circuit court found, in pertinent part, the following: (1) "Fayetteville Ordinance [6587] conflicts with both the Retail Pet Store Act and the Working Animal Act"; (2) "It is clear that the passage of Ordinance [6587] would deprive [Boyle] of its right to do business in Fayetteville insofar as its business includes the sale of cats and dogs"; and (3) "[B]ut for the stay agreed to by Fayetteville and [Boyle], [Boyle] would have been prevented from engaging in a legal business enterprise . . . . But the qualified immunity of [the City] bars recovery. The conduct of [the City] did not violate

"clearly established . . . constitutional rights of which a reasonable person would have known."[4] The complaint was dismissed, and both Boyle and the City timely appealed.

## II. *Standard of Review*

The law is well settled that summary judgment is to be granted by a circuit court only when there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Dodson v. Taylor*, 346 Ark. 443, 57 S.W.3d 710 (2001). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings but also on the affidavits and documents filed by the parties. *Id.*

"A motion for summary judgment based on qualified immunity is precluded only when the plaintiff has asserted a constitutional violation, demonstrated the constitutional right is clearly established and raised a genuine issue of fact as to whether the official would have known that the conduct violated that clearly established right." *Smith v. Brt, supra.*

---

[4]An official is immune from suit if his or her actions did not violate clearly established principles of law of which a reasonable person would have knowledge. *Smith v. Brt*, 363 Ark. 126, 131, 211 S.W.3d 485, 489 (2005) (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). Here, an oddity of this case is that Boyle filed suit only against the City, not any of its officials acting in an official capacity. However, because Boyle's claim fails as a matter of law for the reasons discussed *infra*, the question whether qualified immunity can even apply to a municipal corporation is not properly before us, and we do not reach it here.

4

Whether a party is immune from suit is purely a question of law and is reviewed de novo on appeal. *City of Fayetteville v. Romine*, 373 Ark. 318, 321, 284 S.W.3d 10, 13 (2008).

## III. *Analysis*

Simply put, Boyle claimed that the City passed an ordinance that violated certain Arkansas statutes and, as such, violated the Arkansas Constitution, which in turn created a cause of action under the Arkansas Civil Rights Act for which the City did not have immunity. But Boyle put the cart before the horse. The City passed the Ordinance on July 19, 2022, to go into effect on August 20. Boyle filed the cause of action alleging the statutory violation, and ultimately, the constitutional violation on August 18, and the parties entered the temporary restraining order (which the parties later extended into an agreed injunction) on August 19. Subsequently on May 16, 2023, the City repealed the Ordinance. Consequently, when the circuit court considered the cross-motions for summary judgment, it was considering whether an ordinance that never went into effect and was already repealed violated state statutes. The circuit court's decision finding that the Ordinance violated state law was in error because the allegations in Boyle's complaint were already moot.

Next, the circuit court considered Boyle's claim that the Ordinance "was in violation of a clearly established right [of Boyle], and all those who happen to find themselves within Fayetteville's jurisdiction, to be free from city ordinances adopted in contradiction to state law." But in order for the City to be subject to liability and for Boyle to be able to recover damages under the Arkansas Civil Rights Act, Boyle must first establish that the City did, in fact, deprive it of an actual constitutional right. *Rainey v. Harness*, 339 Ark. 293, 299–300, 5 S.W.3d 410, 415 (1999).

5

Here, Boyle's pleadings do not allege any disputed facts that tend to prove the City deprived it of any right—constitutional or otherwise—because the Ordinance never went into effect; thus, the City never imposed or enforced it against Boyle.[5] Because Boyle never suffered deprivation of any right, it was never damaged; therefore, it is unnecessary to discuss immunity because the City was entitled to judgment as a matter of law.

As discussed above, the circuit court erred by finding that the Ordinance violated state law because there were no damages. Therefore, on cross-appeal, we reverse the circuit court, and remand with instructions to dismiss the case. We dismiss the direct appeal and any other remaining issues as moot.

Cross-appeal reversed and remanded for dismissal of the circuit court's order; direct appeal dismissed as moot.

BAKER, C.J., and HUDSON and WOOD, JJ., concur.

WOMACK, WEBB, and BRONNI, JJ., dissent.

**KAREN R. BAKER, Chief Justice, concurring**. I agree with the lead opinion that the circuit court erred in ruling that the Ordinance violated state law. However, I write separately because my analysis does not turn on mootness, as I do not believe that the relevant allegations in Boyle's complaint are moot.[1] Rather, in my view, the circuit court's

_____

[5]Because no deprivation of any right occurred, we do not reach the question whether a violation of article 12, section 4 of the Arkansas Constitution creates an individual constitutional right that is enforceable under the Arkansas Civil Rights Act.

[1]Boyle acknowledged that its request for declaratory relief based on the interpretation of the relevant acts became moot once the City repealed the Ordinance. However, repealing the Ordinance did not similarly render moot Boyle's claim under the Arkansas Civil Rights Act ("ACRA"). The lead opinion states that the circuit court erred in finding that the Ordinance violated state law because the allegations in Boyle's complaint were already moot.

6

error was its decision to grant, in part, Boyle's motion for summary judgment based on a flawed statutory interpretation of both the Arkansas Retail Pet Store Consumer Protection Act of 1991 ("Retail Pet Store Act") and the Working Animal Protection Act. Because a proper statutory-interpretation analysis demonstrates that the Ordinance did not violate either of the preceding acts, a review of the issues raised on direct appeal is unnecessary. Accordingly, I concur.

Boyle's central argument in this case has been that, because the Ordinance allegedly conflicted with the Retail Pet Store Act and the Working Animal Protection Act, the City violated article 12, section 4 of the Arkansas Constitution, which states: "[n]o municipal corporation shall be authorized to pass any laws contrary to the general laws of the state[.]" Boyle contends that the adoption of the Ordinance therefore violated a clearly established right—its right to be free from city ordinances adopted in conflict with State law—and as a result, it was entitled to relief under the ACRA.[2] Thus, the viability of Boyle's claim under

---

The lead opinion reasons that this is so because the circuit court analyzed "whether an ordinance that never went into effect and was already repealed violated state statutes." That is incorrect. In order to determine whether the City deprived Boyle of a constitutional right in the context of its ACRA claim—a separate count in Boyle's complaint—the circuit court was required to consider whether the Ordinance violated the Retail Pet Store Act and the Working Animal Protection Act.

[2]The lead opinion states that "Boyle's pleadings do not allege any disputed facts that tend to prove the City deprived it of any right—constitutional or otherwise—because the Ordinance never went into effect; thus, the City never imposed or enforced it against Boyle. Because Boyle never suffered deprivation of any right, it was never damaged[.]" To be clear, the alleged constitutional violation of which Boyle complains is *not* simply that the Ordinance violated the Retail Pet Store Act and the Working Animal Protection Act and was unlawfully enforced against it. Rather, Boyle's allegation is more broad—that the City violated the Arkansas Constitution when it adopted *any* ordinance contrary to *any* law in the state in general. Thus, regardless of whether the Ordinance was enforced against Boyle, its claim under the ACRA, however tenable, is tied to the *passage* of the Ordinance as opposed to its enforcement.

the ACRA hinges on whether the Ordinance did, in fact, violate either the Retail Pet Store Act or the Working Animal Protection Act. If the Ordinance did not violate either law, then Boyle's claim necessarily fails as a matter of law and we need not address issues pertaining to immunity or damages.

## I. *Statutory Interpretation*

We review issues of statutory interpretation de novo, as it is for this court to determine the meaning of a statute. *Ark. Dep't of Fin. & Admin. v. Trotter Ford, Inc.*, 2024 Ark. 31, at 8, 685 S.W.3d 889, 895. The basic rule of statutory construction is to give effect to the intent of the legislature by giving words their usual and ordinary meaning. *Davis v. PennyMac Loan Servs., LLC*, 2020 Ark. 180, at 3, 599 S.W.3d 128, 130–31. When the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no need to resort to rules of statutory interpretation. *McMillan v. Live Nation Ent., Inc.*, 2012 Ark. 166, at 4, 401 S.W.3d 473, 476. However, we have explained that "[s]tatutory language is ambiguous if it is open to two or more constructions, or if it is of such obscure and doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning." *Harris v. Crawford Cnty. Bd. of Election Comm'rs*, 2022 Ark. 160, at 4, 651 S.W.3d 703, 706. "When a statute is ambiguous, this court must interpret it according to legislative intent and our review becomes an examination of the whole act. In reviewing the act in its entirety, this court will reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. In addition, this court must look at the legislative history, the language, and the subject matter involved." *Holbrook v. Healthport, Inc.*, 2014 Ark. 146, at 5–6, 432 S.W.3d 593, 597 (internal citations omitted).

8

The ordinance at the center of this appeal was enacted in recognition of the fact that the City "has an interest in maintaining the public safety and welfare of citizens and residents of Fayetteville and its visitors . . . [and] shall have the power to prevent cruelty to animals[.]"[3] The Ordinance read: "[i]t shall be unlawful for a pet shop to offer for sale or to display any dog, cat, puppy, or kitten unless obtained from and in cooperation with the Fayetteville Animal Shelter, a government or nonprofit animal shelter approved by Fayetteville Animal Services, or a nonprofit animal rescue organization approved by Fayetteville Animal Services." To determine whether these restrictions violated State law, we must review the language of both the Retail Pet Store Act and the Working Animal Protection Act in turn.

### A. Retail Pet Store Act

The Retail Pet Store Act was enacted to "require certain guarantees from retail pet stores to the purchasers of dogs and cats that are consistent with their unique status as companions rather than commodities." Ark. Code Ann. § 4-97-102 (Repl. 2023). In furtherance of this purpose, the Act requires that retail pet stores make records containing each animal's health history available to law enforcement and the Department of Health for inspection, and the failure to do so is a Class A misdemeanor. *See* Ark. Code Ann. § 4-97-103(2), (10)(A) (Repl. 2011); *see also* § 4-97-108(a)–(c). However, when the City passed

---

[3]Arkansas Code Annotated § 14-54-103 states that "[c]ities and incorporated towns shall have power to . . . [p]revent cruelty to animals[.]" Ark. Code Ann. § 14-54-103(7) (Supp. 2023).

9

the Ordinance, the Act provided that "[n]othing in this chapter shall be construed to prevent or limit the application of any other law." Ark. Code Ann. § 4-97-109 (Repl. 2011).[4]

The City argues that the preceding language clearly demonstrates that the Retail Pet Store Act did not preempt the Ordinance given that it expressly stated that nothing in the Act shall be construed to prevent or limit the application of any other law, which would necessarily include the Ordinance. The City therefore asserts that the Act did not violate, conflict, restrict, or limit the application of the Ordinance. Boyle responds that the Ordinance violated the Act because it would be impossible for any retail pet store to comply with both the recordkeeping requirements imposed pursuant to the Act and the Ordinance if the animals were obtained from shelters or rescue organizations. I disagree. The plain language of section 4-97-109, as it read when the Ordinance was passed, provided that *nothing* in the Act, including the recordkeeping requirements therein, shall be construed to prevent or limit the application of *any* other law—i.e., the Ordinance passed by the City. Stated differently, contrary to Boyle's position, obtaining dogs and cats from a shelter or rescue organization in compliance with the Ordinance would not have given rise to a violation of the Act because, as the unambiguous language demonstrates, the Act was not designed to prevent or limit the application of such an ordinance.

---

[4]The City repealed the Ordinance when the Retail Pet Store Act was later amended. In 2023, Arkansas Code Annotated section 4-97-109 was amended to provide that "[a] local government shall not pass an ordinance, resolution, or regulation that prohibits a retail pet store from: (1) Acquiring an animal from a: (A) Cattery; (B) Kennel; or (C) Dealer . . . or (2) Selling an animal that is acquired from a cattery, kennel, or dealer[.]" *See* Ark. Code Ann. § 4-97-109(b)(1)–(2) (Repl. 2023).

Accordingly, the circuit court erred when it concluded that the Ordinance conflicted with the Retail Pet Store Act.

B. Working Animal Protection Act

The Working Animal Protection Act, codified at Arkansas Code Annotated section 14-54-1105, provides that "[n]otwithstanding any other provision of law to the contrary, the right to utilize a working animal for the benefit and welfare of the working animal or the individual the working animal serves is guaranteed." Ark. Code Ann. § 14-54-1105(b)(1) (Supp. 2023). Moreover, the Act states that "[a]n ordinance or resolution shall not be enacted by a municipality that terminates, bans, effectively bans, or creates an undue hardship relating to the job or use of a working animal or animal enterprise in commerce, service, legal hunting, agriculture, husbandry, transportation, ranching, entertainment, education, or exhibition." Ark. Code Ann. § 14-54-1105(b)(2). "Working animal" is defined as "a nonhuman animal used for the purpose of performing a specific duty or function in commerce or animal enterprise, including without limitation human service, transportation, education, competition, or exhibition[,]" and expressly excludes "poultry, swine, dairy cows, beef cattle, sheep, goats, or other similar nonperformance production enterprise." Ark. Code Ann. § 14-54-1105(a)(1)–(2).

The City argues that the plain language of the Working Animal Protection Act supports its position that the Act does not prohibit municipal ordinances concerning retail pet stores. Specifically, the City contends that the Act is inapplicable to the present case because, as is relevant here, it was clearly designed to protect the *job* or *use* of working animals—not pets—or animal enterprises. The City contends that the Act is inapplicable to

11

pets, as they are commonly understood to be the opposite of "working animals" as defined therein. Further, although "animal enterprise" is not similarly defined, the City nevertheless asserts that Boyle is not an "animal enterprise" within the meaning of the Act because its language clearly contemplates that such an enterprise can exist only when a "working animal" is used "for the purpose of performing a specific duty or function" in the enterprise. However, to the extent that the relevant language is determined to be ambiguous, the City contends that legislative intent is best demonstrated by the remarks of the Act's sponsors given immediately prior to its passage by the Arkansas House of Representatives and Senate. Boyle responds that it is unnecessary for the court to delve into legislative history because the language set forth in the Act is clear and unambiguous. Boyle asserts that, although "animal enterprise" is not a statutorily defined term, the common meaning of the words "nonhuman," "animal," and "enterprise" lends support to its position that the Act is applicable to the present case. Specifically, Boyle argues that because it is in the business of selling dogs and cats—i.e., nonhuman animals— and those dogs and cats can then be used for human service, it is therefore an animal enterprise pursuant to the Act.

In my view, both parties present a reasonable interpretation of the relevant language set forth in the Working Animal Protection Act. Therefore, this language is ambiguous, and we must look to legislative history in order to properly determine legislative intent. Here, the legislative history that was presented to the circuit court negates the idea that the Act was meant to prohibit an ordinance such as the one at issue in the present case. In presenting the Bill[5] to the Arkansas House of Representatives, Representative Craig Christiansen

---

[5]H.B. 1883, 93d General Assembly, Reg. Sess. (Ark. 2021).

explained that the language therein "defines and ensures that the State of Arkansas recognizes the various disciplines that are used in human–animal interaction, such as horse shows, dog shows, trail riding competitions . . . hunting, deer hunting, duck hunting, other hunting enterprises where man and animal work together." https://www.arkansashouse.org/watch-live, April 19, 2021, *House Meeting* 1:00 p.m., 2:38:05–2:38:31. Christiansen further explained that some organizations aim to "make public opinion turn against human–animal enterprise under the guise of animal cruelty" and may "seek ordinances and other things that make it impossible for horse shows and other events to take place." https://www.arkansashouse.org/watch-live, April 19, 2021, *House Meeting* 1:00 p.m., 2:38:35–2:38:56. Additionally, Christiansen specified that the Bill "does not change, remove, alter, or prevent an ordinance against puppy mills, kitten mills, breed restrictions, or remove the authority of mayors or city chief executives to handle their local control, their local ordinances, and be able to govern their city." https://www.arkansashouse.org/watch-live, April 19, 2021, *House Meeting* 1:00 p.m., 2:38:56–2:39:23. Similarly, when presenting the Bill to the Arkansas Senate, Senator Ronald Caldwell explained that,

> What this [Bill] does is protect local horse shows, rodeos, dog shows, and field trials from having local municipalities passing ordinances to not allow those. It does not affect any of the existing laws or alter any state laws or rules that regulate animal care, public health, or public safety of animals.

https://senate.arkansas.gov/todays-live-stream-meetings/archived-meetings/, April 26, 2021, *Senate Chamber* 1:00 p.m., 4:38:12–4:38:36.

> When asked about the Bill's connection, if any, to the regulation of puppy mills,

Caldwell responded that

> [t]his is working animal only. The Bill very clearly states it does not alter any other rules or laws. A working animal for instance would be a company that

may have a carriage operation, and it allows them to have that. But it does not protect any puppy mills. It does not change any of those laws at all. Basically what it protects would be the working class such as a horse show, a rodeo, or dog field trial . . . all it does, it says that a municipality cannot pass an ordinance to outlaw a working animal *function* . . . this does not alter any of the puppy mill laws at all.

https://senate.arkansas.gov/todays-live-stream-meetings/archived-meetings/, April 26, 2021, *Senate Chamber* 1:00 p.m., 4:38:39–4:40:08 (emphasis added).

Based on the foregoing, I agree with the City's interpretation of the Working Animal Protection Act. As discussed above, the Act prohibits municipalities from enacting any ordinance that "terminates, bans, effectively bans, or creates an undue hardship *relating to the job or use of a working animal or animal enterprise* in commerce, service, legal hunting, agriculture, husbandry, transportation, ranching, entertainment, education, or exhibition." Ark. Code Ann. § 14-54-1105(b)(2) (emphasis added). This is because "the right to *utilize* a working animal for the benefit and welfare of *the working animal or the individual the working animal serves* is guaranteed." Ark. Code Ann. § 14-54-1105(b)(1) (emphasis added).

First, it is clear that dogs, cats, puppies, and kittens are not "working animals" within the meaning of the Act. When asked whether this Act would impact puppy mills, Representative Christiansen remarked that it would not prevent an ordinance against puppy mills or kitten mills, nor would it "remove the authority of mayors or city chief executives to handle their local control, their local ordinances, and be able to govern their city." Senator Caldwell similarly assured his colleagues that the Act did not affect puppy mills, clarifying that "[t]his is *working animal only*." (Emphasis added.) These remarks support the conclusion that "working animal" was intended to exclude puppies and kittens. Next, even if pets were considered "working animals," Boyle is plainly not an "animal enterprise." I agree with the City that the term "animal enterprise" was meant to be construed and applied

14

within the specific context of the Act, taking into consideration the statutory definition of "working animal." Stated differently, "animal enterprise" is limited by the context in which it is used and can be interpreted to encompass enterprises that *use* working animals for the purpose of performing a specific duty or function in that enterprise. Legislative history demonstrates that the General Assembly intended for the Act to be interpreted in this way, and specifically, that it was meant to apply to the use of working animals as opposed to the sale of working animals. As discussed above, the Act was intended to protect horse shows, dog shows, trail-riding competitions, rodeos, and various hunting enterprises "where man and animal work together." The Act was meant to prevent a municipality from passing an ordinance to outlaw a working-animal *function* similar to those listed by Christiansen and Caldwell—not the *sale*. Thus, dogs, cats, puppies, and kittens are not "working animals," and Boyle is not an "animal enterprise" within the meaning of the Act.

Accordingly, the circuit court erred when it concluded that the Ordinance conflicted with the Working Animal Protection Act.

## II. *Conclusion*

As stated above, the viability of Boyle's claim under the ACRA hinges on whether the Ordinance violated either the Retail Pet Store Act or the Working Animal Protection Act. Because the Ordinance did not conflict with either law, Boyle's claim necessarily fails as a matter of law. The circuit court erred in concluding otherwise and subsequently granting, in part, Boyle's motion for summary judgment on that basis.

Accordingly, I concur.

HUDSON, J., joins.

15

**Rhonda K. Wood, Justice, concurring.** This case on direct appeal should be simple. An ordinance that never went into effect against the plaintiff-appellant, Boyle Ventures, and thus could not damage it, was repealed. Boyle Ventures cannot claim any entitlement to relief. Even assuming it could pursue damages against the City, it has none. And there is no way to grant injunctive or declaratory relief against an ordinance that has already been repealed. This case is the model of mootness. No relief can be granted except to dismiss and put this matter to bed.

While I fully join the lead opinion, I write to address the dissent's view that this case should be reversed and remanded to the circuit court for more litigation on the question of the City's immunity. The dissent seeks to preserve the City's entitlement to be free from litigation by forcing the City to litigate a moot case. The dissent pronounces that the immunity from suit in Ark. Code Ann. § 21-9-301 (Repl. 2022) is jurisdictional and not an affirmative defense. The plurality's premise is that most immunities (or at least sovereign immunity) are questions of subject-matter jurisdiction—a position that this court has rejected.[1] Like other legal immunities in Arkansas, this court has expressly held that the

---

[1]*Walther v. FLIS Enters., Inc.*, 2018 Ark. 64, at 4–5, 540 S.W.3d 264, 267 ("[W]e hold that ***sovereign immunity is not a matter of subject-matter jurisdiction***." (emphasis added)). Recently, the Eighth Circuit in an *en banc* opinion noted a similar distinction with respect to the federal analogue: "***Immunity and jurisdiction are distinct concepts. Unlike immunity, subject matter jurisdiction*** must be evaluated by federal courts independent of the litigants' contentions, cannot be waived by a party, and cannot be abrogated by Congress." *S.A.A. v. Geisler*, 127 F.4th 1133, 1137 (8th Cir. 2025) (emphasis added).

statutory immunity afforded by Arkansas Code Annotated section 21-9-301 is an affirmative defense.[2]

Mootness is a threshold question that we address before affirmative defenses.[3] This makes sense. Conservation of judicial resources demands that we consider mootness first, and this appeal demonstrates why. The dissent wants to remand to the circuit court for a ruling on the City's statutory immunity, which will most certainly result in a second appeal. And no matter how the circuit court decides the statutory-immunity question, we would have to dismiss the case because it will still be moot.

Even our scholarly disagreement over the treatment of statutory immunity as subject-matter jurisdiction is not dispositive. This court explained, "We will not address moot issues or issue advisory opinions even on subject-matter jurisdiction."[4] We should not delay justice

---

[2]*Vent v. Johnson*, 2009 Ark. 92, at 14, 303 S.W.3d 46, 53 ("[W]e hold that the ***immunity afforded by section 21-9-301 is an affirmative defense*** that must be specifically pled and proven in order to be considered by the circuit court."(emphasis added)); *Seth v. St. Edward Mercy Med. Ctr.*, 375 Ark. 413, 419, 291 S.W.3d 179, 184 (2009) **("[C]*haritable immunity is an affirmative defense*** that must be specifically asserted in a responsive pleading under Ark. R. Civ. P. 8."(emphasis added)); *Felton v. Rebsamen Med. Ctr., Inc.*, 373 Ark. 472, 480–81, 284 S.W.3d 486, 492–93 (2008) ("***We agree and hold that charitable immunity is an affirmative defense*** . . . [and] must be specifically pled to be considered by the circuit court." (emphasis added)).

I do not dispute that the City raised statutory immunity as an affirmative defense, that it argued for statutory immunity in its final motion for summary judgment, and that it attached its liability insurance policy to that motion. It still is not clear to me whether the issue was preserved on appeal due to the City's failure to obtain a ruling from the circuit court on this issue. Does it matter? No. The case is moot either way and should be dismissed.

[3]*Arkansans for Healthy Eyes v. Thurston*, 2020 Ark. 275, at 3.

[4]*Id.* (explaining "jurisdiction and res judicata [are] moot because our judgment would have no practical legal effect on an existing controversy") (citing *Gray v. Thomas Barnes*, 2015 Ark. 426, 474 S.W.3d 876).

to resolve issues that won't affect the outcome of a case. A critical restraint on the power of judges is adjudicating only real disputes in live cases and controversies between parties. The resolution of this matter requires no more than the recognition of its mootness. We should stop there and dismiss the case.

**SHAWN A. WOMACK, Justice, dissenting.** Because the circuit court failed to rule on the City's claim that it was entitled to statutory immunity, the proper disposition of this direct appeal is to reverse and remand. For this reason, any discussion of the merits in either the direct appeal or cross-appeal would be purely advisory.

I.    *Discussion*

Whether a party is immune from suit is a jurisdictional issue.[1] Because Arkansas courts are stripped of jurisdiction when a party is immune from suit, this issue must be decided before reaching the merits of any given case.[2] Likewise, the right of immunity from

---

[1]This court has mistakenly rejected the notion that statutory immunity and sovereign immunity have similar jurisdictional qualities. Sovereign immunity (i.e., the State's immunity from suit) is jurisdictional because it bars the court from hearing the case altogether. Likewise, Ark. Code Ann. § 21-9-301 provides political subdivisions of the state immunity from suit. This clearly raises a jurisdictional issue because it brings into question a court's ability to hear a case. This distinguishes it from the text of other immunity statutes that provide immunity from liability, which renders them an affirmative defense. Treating Ark. Code Ann. § 21-9-301 as an affirmative defense in this instance would render the immunity from suit language superfluous with the immunity from liability language. Put differently, it would require reading the immunity from suit language out of the statute.

[2]This court recently held that jurisdiction must be considered prior to making merits determinations. *See Cypert v. State*, 2025 Ark. 11, at 4, 705 S.W.3d 496, 498 ("To consider the merits of a claim, we must first ensure that we have jurisdiction to review it." (citing *Nance v. State*, 2014 Ark. 201, at 16, 433 S.W.3d 872, 881; *LaRue v. LaRue*, 268 Ark. 86, 88, 593 S.W.2d 185, 187 (1980))). Though the jurisdictional issue there was related to this court's appellate jurisdiction, the same principle holds true in this case.

suit is effectively lost if a case is permitted to proceed on the merits prior to a determination on this issue.[3]  In this case, the circuit court failed to address the City's claim of statutory immunity before reaching the merits of the case.  This is improper.

Here, it is undisputed that the City alleged it was entitled to statutory immunity pursuant to Ark. Code Ann. § 21-9-301.  The City raised this issue in its answer, its motions for summary judgment, and the related briefs.  Section 21-9-301 provides:

> It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, public charter schools, special improvement districts, law enforcement agencies for and certified law enforcement officers employed by a public or private institution of higher education, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies *shall be immune from liability and from suit for damages* <u>except to the extent that they may be covered by liability insurance.</u>

Ark. Code Ann. § 21-9-301(a) (Repl. 2022) (emphasis added).

Because statutory immunity was implicated in this case, the circuit court was required to decide this jurisdictional issue first.  The language of this statute is clear and unambiguous. A city, like Fayetteville, is entitled to immunity from a suit for damages unless that entity is covered by liability insurance.[4]  Making this determination is quite simple.  Yet the circuit court failed to make any findings of fact or conclusions of law with respect to the City's

---

[3]Immunity from suit exists to prevent litigation, not liability. *Davis Nursing Ass'n v. Neal*, 2019 Ark. 91, at 8, 570 S.W.3d 457, 462 (Wood, J., concurring) (discussing charitable immunity, although this general principle of immunity equally applies to statutory immunity); *see also Gentry v. Robinson*, 2009 Ark. 634, at 9, 361 S.W.3d 788, 793.

[4]Though Ark. Code Ann. § 21-9-301 does not apply to all suits against political subdivisions of the state, it does apply to Arkansas Civil Rights Act claims.  *See Benton Sch. Dist. v. Greer*, 2023 Ark. 160, at 11, 677 S.W.3d 799, 805 (Womack, J., concurring).

claim of statutory immunity.[5]  Its failure to do so requires this court to reverse and remand this case to the circuit court.[6]

Upon remand, I would instruct the circuit court to make findings of fact and conclusions of law on the City's claim of statutory immunity.  This is not to be confused with common-law qualified immunity or common-law municipal immunity, which apply to federal claims.[7]

It should go without saying that statutory immunity, common-law qualified immunity, and common-law municipal immunity are different things.  Unfortunately, however, this court has treated statutory immunity under Ark. Code Ann. § 21-9-301 and

---

[5]This court has held time and again that the issue of statutory immunity is purely a question of law that is reviewed de novo.  *See, e.g.*, *Benton Sch. Dist.*, 2023 Ark. 160, at 5, 677 S.W.3d at 802 (citing *City of Fayetteville v. Romine*, 373 Ark. 318, 321, 284 S.W.3d 10, 13 (2008)).  This is incorrect.  According to the text of Ark. Code Ann. § 21-9-301, whether a political subdivision of the state is entitled to immunity hinges in part on an issue of fact—whether that political subdivision is covered by liability insurance.  Because statutory immunity presents a mixed question of law and fact, factual findings of the circuit court should be reviewed for clear error and conclusions of law should be reviewed de novo.

[6]Appellate courts do not engage in fact-finding, *see Brumley v. Keech*, 2012 Ark. 263, at 4 (citing *Looper v. Madison Guar. Sav. & Loan Ass'n*, 292 Ark. 225, 729 S.W.2d 156 (1987), which is why this court appoints special masters in original action cases challenging the sufficiency of signatures collected for proposed popular name and ballot titles. *See, e.g.*, *Zook v. Martin*, 2018 Ark. 306, 558 S.W.3d 385.  As a result, this court cannot decide whether the city is entitled to statutory immunity at this time.  Because this court does not engage in fact-finding in the first instance, it often remands cases to the circuit court.  *See, e.g.*, *Baptist Health v. Haynes*, 367 Ark. 382, 390, 240 S.W.3d 576, 582 (2006); *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2023 Ark. 175, 678 S.W.3d 27; *Crossno v. State*, 368 Ark. 593, 247 S.W.3d 843 (2007).

[7]Below, the circuit court, citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), found that the City of Fayetteville was entitled to qualified immunity, which barred Boyle Ventures from recovery under the Arkansas Civil Rights Act, codified at Ark. Code Ann. § 16-123-105 (Repl. 2016).  Even if it were appropriate to apply federal common-law immunity below (it was not, because our state statute is controlling on claims sounding in state law), the circuit court failed to apply the appropriate form of immunity.  *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978) (discussing the municipality immunity standard).

common-law qualified immunity as the same thing, while often failing to address municipal immunity altogether. This is in error.

Arkansas Code Annotated section 21-9-301 has no limiting language in its grant of statutory immunity to political subdivisions of the state other than a political subdivision that is covered by insurance. Nevertheless, for some inexplicable reason, this court has imputed language from section 19-10-305—the state officer and employee-immunity statute—to analyze immunity under section 21-9-301. For example, this court in *Smith v. Brt*, 363 Ark. 126, 130, 211 S.W.3d 485, 489 (2005), stated:

> Our interpretation of section 21-9-301 must begin with the analysis this court has used in interpreting the counterpart qualified-immunity statute that applies to state employees, codified at Ark. Code Ann. § 19-10-305. Section 19-10-305 provides state employees with qualified immunity from civil liability for non-malicious acts occurring within the course of their employment.

The court then engaged in a federal qualified-immunity analysis, completely disregarding the language in section 21-9-301.[8]

> In interpreting section 19-10-305, we have traditionally been guided by the analysis adopted by the Supreme Court for qualified-immunity claims in federal civil-rights actions. Under that analysis, a motion for summary judgment based upon qualified immunity is precluded only when the plaintiff has asserted a constitutional violation, demonstrated the constitutional right is clearly established and raised a genuine issue of fact as to whether the official

---

[8]It must also be noted that the court completely disregards the text of Ark. Code Ann. § 19-10-305 when it engages in any discussion of qualified immunity when claims are based solely on Arkansas law. That provision provides, "Officers and employees of the State of Arkansas *are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment.*" Ark. Code Ann. § 19-10-305(a) (Repl. 2016) (emphasis added). Nowhere in this statute does it say that our courts are to impute federal common-law immunity in making a determination about whether officers and employees of the state are immune under section 19-10-305.

would have known that the conduct violated that clearly established right. An official is immune from suit if his or her actions did not violate clearly established principles of law of which a reasonable person would have knowledge. The objective reasonable-person standard utilized in qualified-immunity analysis is a legal inquiry. The inquiry outlined above is a restatement of the standard used by this court to evaluate motions for summary judgment on the ground of qualified immunity.[9]

This court has never provided any articulable reason for disregarding the text of section 21-9-301 and blending statutory immunity with federal common-law qualified immunity. Likely because this position defies common sense and is untenable. Indeed, I am unaware of any other state that has done so. Because the General Assembly has spoken on the issue of statutory immunity, going forward, our courts should simply adhere to the text of Ark. Code Ann. § 21-9-301 in making determinations about whether a defendant is entitled to statutory immunity for claims sounding in state law. Imputing federal common-law immunity that runs afoul of this statute is simply improper.

For these reasons, I respectfully dissent.

WEBB and BRONNI, JJ., join this dissent.

*Miller, Butler, Schneider, Pawlik & Rozzell, PLLC*, by: *George M. Rozzell IV*, for appellant/cross-appellee.

*Kit Williams*, Fayetteville City Attorney; *Blake Pennington*, Assistant City Attorney; and *Roy, Lambert, Lovelace, Bingaman & Wood, PLLC*, by: *Brian D. Wood* and *James H. Bingaman* for appellee/cross-appellant.

---

[9] *Smith*, 363 Ark. at 130–31, 211 S.W.3d at 489 (internal citations omitted).

22