Cite as 2025 Ark. App. 468

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-22-679

| | |
|---|---|
| CHRISTINA MARZIALE, INDIVIDUALLY AND AS MOTHER OF BABY BOY MARZIALE; AND DANA MCLAIN, ADMINISTRATOR OF THE ESTATE OF ELAINE MARZIALE<br><br>APPELLANTS<br><br>V.<br><br>KIMBERLY BROWN, SPECIAL ADMINISTRATOR FOR THE ESTATE OF TENISHA BROWN, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY; TYRAN TURNER, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; JENNIFER FRIERSON, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY; PHYLLIS SILAS; WELLPATH, LLC, F/K/A CORRECT CARE SOLUTIONS, LLC; STEPHEN COOK; MAKITA LAGRANT; AND JOHN DOES 5–10 IN THEIR INDIVIDUAL CAPACITIES<br><br>APPELLEES | Opinion Delivered October 8, 2025<br><br>APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT<br>[NO. 35CV-18-660]<br><br>HONORABLE ALEX GUYNN, JUDGE<br><br><br><br><br><br><br><br><br><br><br><br><br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

This is an Arkansas Civil Rights Act case involving a jail transport from the Arkansas

Department of Community Correction facility in Pine Bluff, Arkansas (DCC), to the

Jefferson County Regional Medical Center (JRMC) on October 4, 2015. The issues on appeal involve sovereign and statutory immunity.

For the reasons explained below, we affirm the circuit court's summary-judgment order.

## I. *Background*

Christina Marziale entered the custody of the DCC when she was approximately thirty weeks pregnant with twins. On October 4, 2015, she was examined by Stephen Cook, a licensed practical nurse employed by Correct Care Solutions, LLC (CCS). CCS had a contract with the DCC to provide medical care to inmates. Cook determined that Marziale needed to go to the hospital, but he or someone else at CCS chose not to call an ambulance. Instead, Tenisha Brown,[1] a correctional officer at the DCC, was asked to drive Marziale to the hospital for observation.

Marziale stated in an affidavit that Cook told her "in the presence of the guard that I was just going to the hospital for a check up." Further, Marziale stated in her affidavit that "Cook did not even talk to the driver of the agency car, [Tenisha] Brown, to give her a report, though if she were receiving responsibility for the resident, surely she, as an untrained guard, needed information even more than a nurse." Additionally, she said that "Mr. Cook did not say it was an emergency, nor did Mr. Cook act with any urgency." Brown's testimony in her

---

[1]Brown passed away while the lawsuit was ongoing in the circuit court. Kimberly Brown was appointed the special administrator of her estate for the purpose of defending this lawsuit.

2

deposition is consistent with Marziale's affidavit—that no one told her anything about Marziale's condition.

Brown testified that she asked Marziale if she was okay, and Marziale responded that she was. Marziale did not say anything further to Brown during the drive to the hospital. Instead of taking Marziale straight to JRMC, Brown stopped at Sonic to get a hamburger. She testified that she did this because she needed food to take with her medication and because she was afraid she would be at the hospital with Marziale for up to twelve hours without access to food once she got there. According to Brown's testimony—the only evidence in the record about this point—the stop took approximately two minutes. The entire ride from the DCC facility to the hospital took fifteen to seventeen minutes.

Once Marziale arrived at JRMC, Brown escorted her to the second floor, which was the labor and delivery unit. At that point, Marziale began vomiting blood. The medical staff at the hospital performed an emergency cesarean to deliver the twins: a girl named Elaine and a boy. The boy had very low Apgar scores and was transferred to the NICU at Arkansas Children's Hospital where he stayed for some time. Elaine unfortunately died shortly before or after delivery.

The litigation surrounding this incident began a few days later. Although only one order from one of those lawsuits is before us, Brown's deposition referenced above was taken in a federal proceeding, and there are arguments in this appeal involving an order in that same federal proceeding.

Marziale initiated this case on October 7, 2015, when she sued Phyliss Silas, the DCC warden. At some point, an estate was opened for Elaine, and Dana McLain was appointed administrator. Marziale and McLain are the appellants here. The appellants eventually dismissed Silas but proceeded to file several amended complaints against various correctional officers, medical personnel, and John Does as well as CCS. By December 14, 2020, the remaining defendants were CCS, three correctional officers in their official and individual capacities—Tyran Turner, Jennifer Frierson, and the estate of Tenisha Brown—and two LPNs—Makita LaGrant and Stephen Cook. The appellants brought claims against Turner, Frierson, and Brown for violations of the Arkansas Civil Rights Act, wrongful death, outrage, and violations of the United States Constitution and because they were victims of a felony (felony manslaughter) under Arkansas Code Annotated section 16-118-107 (Repl. 2016). Marziale brought these same claims against LaGrant, Cook, and CCS on behalf of herself and her son.

The appellants moved to dismiss LaGrant, Cook, and CCS with prejudice, and that motion was granted on October 4, 2021. The circuit court granted Turner's and Frierson's motions to dismiss based on sovereign and statutory immunity on January 24, 2022. After this January 24 order, the remaining claims were against Brown in her individual and official capacity.

The appellants filed a partial motion for summary judgment against Brown on January 24, 2022. In that motion, the appellants requested that the circuit court find that

Brown had behaved recklessly and that she had been deliberately indifferent to Marziale's serious medical condition.

Brown filed her own motion for summary judgment on February 21. In her motion, Brown contends that the claims against her in her official capacity had been dismissed and that she was entitled to judgment as a matter of law on the individual claims because she had statutory immunity. On May 5, the appellants filed their fourth amended and supplemental complaint restating their claims for wrongful death and intentional infliction of emotional distress as well as their claims under the ACRA but also adding a claim for negligence. In the fourth amended complaint, the appellants state they are bringing only individual-capacity claims. Brown then amended her summary-judgment motion to include arguments about why she was entitled to judgment as a matter of law on the appellants' new negligence claim.

The circuit court held two hearings on the motions and then entered an order on July 13 granting Brown's motion for summary judgment. The circuit court also entered a judgment dismissing all claims against Brown with prejudice. The appellants timely filed their notice of appeal identifying "the grant of summary judgment to Kimberly Brown" as the order they were appealing.

At some point during these events, there was a federal proceeding filed by Marziale and McLain against CCS, Makita LaGrant, Stephen Cook, and Wellpath, LLC (the 2018 Federal Case). During the 2018 Federal Case, Magistrate Judge Deere entered a partial recommended disposition in which she found that Marziale "had serious medical needs during her pregnancy and the babies' delivery." Judge Deere made no findings regarding

5

Brown's behavior or knowledge or the effect of the stop at Sonic on Marziale's or her children's conditions. Judge Marshall adopted Judge Deere's findings and recommended disposition, denying LaGrant's and Cook's motions for summary judgment and partially granting and partially denying Marziale's motion for partial summary judgment. The appellants argue that the partial recommended disposition in the 2018 Federal Case has a preclusive effect in this state proceeding.

## II. *Standard of Review*

A circuit court should grant summary judgment only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Boyle Ventures, LLC v. City of Fayetteville*, 2025 Ark. 71, at 4, 711 S.W.3d 280, 283. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, this court determines if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* The court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* This review focuses not only on the pleadings but also on the affidavits and documents filed by the parties.

Whether a party is immune from suit is an issue of law, which is reviewed de novo. *City of Highfill v. Scantlin*, 2025 Ark. App. 242, at 4–5, 713 S.W.3d 501, 506.

III. *Analysis*

Because Brown was a correctional officer performing her duties during the facts giving rise to this lawsuit, all the appellants' claims are affected by sovereign and statutory immunity. We discuss those issues in turn below.

A. Sovereign Immunity

1. *Turner and Frierson*

The first point on appeal is whether the circuit court erred in granting Turner's and Frierson's Arkansas Rule of Civil Procedure 12(b)(6) motions to dismiss.

The appellants appealed "the grant of summary judgment to Kimberly Brown[.]" "[A]n order not mentioned in the notice of appeal is not properly before an appellate court." *Johnson v. De Kros*, 2014 Ark. App. 254, at 11, 435 S.W.3d 19, 26. The January 24 order granting the motion to dismiss is not properly before this court because the appellants did not identify that order in their notice of appeal. Instead, they specifically identified only the order related to Brown's motion for summary judgment.

The appellants cannot argue that the January 24 dismissal order was an intermediate order involving the merits and necessarily affecting the "summary judgment to Kimberly Brown." They chose to designate a partial record, and Turner's and Frierson's Rule 12(b)(6) motions are not included in it. It is clear that the appellants did not intend to appeal that order, and it is not before us.

## 2. *Kimberly Brown*

In the January 24 order, the circuit court dismissed all claims against Turner and Frierson. In that same order, the circuit court stated, "Tenisha Brown's Motion [to dismiss] is hereby denied." Brown's motion to dismiss, like Turner's and Frierson's, was based on sovereign immunity. Therefore, the official-capacity claims against Brown were still pending after the January 24 order.

The order granting Brown's motion for summary judgment did not mention any other motions, nor did it address any specific claims. Brown's motion for summary judgment specified that she was seeking relief *only* on the claims against her in her individual capacity. Therefore, the official-capacity claims were still pending when the circuit court entered its order granting summary judgment. However, the appellants proceeded to abandon their official-capacity claims against Brown when they stated in their notice of appeal that "[e]ach Plaintiff abandons any pending but unresolved claim." As Rule 3(e)(vi) states, "This abandonment shall operate as a dismissal with prejudice effective on the date that the otherwise final order or judgment appealed from was entered." Ark. R. App. P.–Civ. 3(e)(vi).

For this reason, we hold that the appellants abandoned their official-capacity claims against Brown. Therefore, we do not address the merits of the appellants' sovereign-immunity arguments.

## B. Statutory Immunity

We turn now to the individual-capacity claims against Brown. Under Arkansas Code Annotated section 19-10-305(a) (Repl. 2016),[2] "Officers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment."

This is known as statutory immunity. To determine whether a state actor is entitled to statutory immunity, "the court has traditionally been guided by the federal standard for qualified immunity." *Koontz v. Payne*, 2025 Ark. App. 200, at 8, 713 S.W.3d 34, 42.

1. *Insurance coverage*

Under the statute, a state official is not entitled to statutory immunity to the extent he or she is covered by liability insurance. There is no evidence in the record that Brown, personally, held any type of insurance that would pay a judgment against her. Instead, the appellants argue that the indemnity provision in the contract between CCS and the DCC would cover such a judgment.

Brown is not a party to the contract between CCS and the DCC. Further, the appellants are not parties to the contract between CCS and the DCC, nor are they third-party beneficiaries of the contract. *See Cherry v. Tanda, Inc.*, 327 Ark. 600, 610, 940 S.W.2d

---

[2]This was the immunity statute in effect when the order was entered and the appeal was briefed. The legislature has since reorganized the Code, and the statutory-immunity provision is now at section 25-44-305(a), effective August 5, 2025. The new provision is identical to the one cited above.

457, 461 (1997).[3] For that reason, the appellants could not sue CCS to enforce the indemnity provision. *Id.*

Instead, the indemnity provision would be invoked only if Brown were found liable in her individual capacity and the DCC paid that judgment. In that case, the State of Arkansas would have to pursue a contract claim against CCS to determine whether the indemnity provision applied to this case. This would "indirectly coerce the State to bear a financial obligation" and would violate the principles of sovereign immunity. *Traveler's Cas. & Ins. Co. of Am. v. Ark. State Highway Comm'n*, 353 Ark. 721, 729, 120 S.W.3d 50, 54 (2003). Further, if the State was not successful in a lawsuit against CCS to determine whether CCS was required to indemnify, then the State would be liable for damages, also violating the principles of sovereign immunity.

For these reasons, the principles of statutory immunity do apply to all of appellants' claims against Brown in her individual capacity.

### 2. *Deliberate indifference*

The appellants do not argue that Brown acted maliciously. Therefore, Brown "is entitled to qualified immunity unless (1) [appellants have] alleged facts that demonstrate the deprivation of an actual constitutional right, and (2) the right was clearly established at the time of the alleged violation such that a reasonable official would have known that his actions were unlawful." *Koontz*, 2025 Ark. App. 200, at 9, 713 S.W.3d at 42.

---

[3]We make no finding regarding the interpretation, construction, or applicability of the indemnity clause between the DCC and CCS.

The appellants allege that Brown was deliberately indifferent to Marziale's serious medical need, which is a type of cruel and unusual punishment that both the United States Supreme Court and Arkansas appellate courts have recognized. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976); *Grayson v. Ross*, 369 Ark. 241, 253 S.W.3d 428 (2007). Deliberate indifference "is something more than gross negligence, yet less than acting with the purpose to induce harm." *Grayson*, 369 Ark. at 245, 253 S.W.3d at 431. Further, deliberate indifference "requires a showing that the official knew the risk existed, but disregarded it." *Early v. Crockett*, 2014 Ark. 278, at 13, 436 S.W.3d 141, 149. In other words, to overcome summary judgment, the facts as viewed in the light most favorable to the appellants would have to show that Brown knew that Marziale had a serious medical need and disregarded it.

The appellants cannot clear that hurdle.

None of the parties argue that Marziale was not suffering from a serious medical need, so for the purpose of this appeal, the court can proceed as if Marziale has proved that element. In the 2018 Federal Case, Judge Deere found that there was a serious medical need. The appellants ask this court to hold that offensive collateral estoppel requires a finding that Brown was deliberately indifferent. However, Judge Deere did not make any findings as to Brown's actions or state of mind, and none of the parties are fighting about whether a serious medical need existed. Further, Judge Deere's findings do not show anything about whether Brown had subjective knowledge of the serious medical need. The doctrine of offensive collateral estoppel is not, therefore, relevant to this appeal.

11

It is important to note that pregnancy alone is not a serious medical need. *Coleman v. Rahija*, 114 F.3d 778, 785 (8th Cir. 1997) (noting that "a woman's pregnancy is generally not, alone, a serious medical need" and identifying factors that can show a complicated pregnancy constitutes a serious medical need). Brown did not have any interactions with Marziale before the transport, and there are no facts in the record indicating that Brown had any reason to know the pregnancy was high risk.

As for the day of the transport, Brown testified in her deposition that Marziale walked to the car without assistance and that "she was walking fine." Brown also testified that she did not remember Marziale being doubled over in pain. When Brown arrived at the DCC medical unit, Marziale was sitting calmly and quietly.

Although appellants state in their briefing that there were bloodstains on Marziale's shirt and shorts when Brown took custody of her, there is absolutely no support for that in the record. In fact, Marziale's treating physician testified specifically that Marziale did not have any vaginal bleeding at all. From the record, the only blood that was observed on her clothing was after she arrived at the hospital and vomited in the labor and delivery unit. The appellants claim that her treating physician said that "it was obvious she had been throwing up for some time." In their reply brief, the appellants argue that because the blood on Marziale's shirt was clotted, a reasonable juror could conclude it was there for a long time. However, this conjecture is not supported by the record because the treating physician testified only that he had been told that her vomiting had started the day before. He also testified that the blood on Marziale's clothing had clotted before it came out of her GI tract,

not that it had taken a long time to clot after she vomited. This court can only consider facts that are in the record and not "gratuitous assertions based on matters not in the record." *Turner v. State*, 349 Ark. 715, 720, 80 S.W.3d 382, 386 (2002).

Brown was not aware that Marziale had been vomiting blood while in the DCC until long after the emergency cesarean section. Further, she asked Marziale if she was okay, and Marziale responded that she was. Marziale did not say anything further during the drive. Neither Cook nor Brown's supervisor told her that this was a medical emergency, and Brown testified that if it had been an emergency, she thought an ambulance would have been called. Cook never told Brown anything he had observed about Marziale's condition. Marziale herself stated, "Mr. Cook told me in the presence of the guard that I was just going to the hospital for a check up." And further, "Mr. Cook did not say it was an emergency, nor did Mr. Cook act with any urgency." We also note that Marziale was not in labor during her transport to the hospital.

It was routine for pregnant inmates to go for treatments that were not emergencies. Brown's supervisor told her that she was taking Marziale to the hospital for observation. Brown testified that she would not have stopped at Sonic if she had known it was an emergency.

The appellants did not include any affidavits, depositions, or other evidence in their summary-judgment filings that would contradict any of Brown's testimony. Marziale's affidavit presented at the summary-judgment hearing even states there was no indication to

Brown that this was an emergency. This situation resulted in tragedy, but there is simply no evidence that Brown knew she was transporting someone with a serious medical need.

Without a showing that "the official knew the risk existed, but disregarded it[,]" *Early*, 2014 Ark. 278, at 13, 436 S.W.3d at 149, the appellants cannot prove their claims for deliberate indifference, and Brown is entitled to statutory immunity. Because they cannot meet a standard for deliberate indifference, the appellants certainly cannot meet the standard for negligence.

For these reasons, the circuit court's summary-judgment order is affirmed.

Affirmed.

THYER and HIXSON, JJ., agree.

*Luther Oneal Sutter* and *Lucien R. Gillham*, for appellants.

*McDaniel Wolff, PLLC*, by: *Scott P. Richardson*, for separate appellee Kimberly Brown.